UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

ELAINE AGHAEEPOUR, ASHLEY GLASGOW, : 
JULIE HIGGINS, SHANE MOORE, MICHELE :
NORRIS, JESUS RIVERA, SCHILCO, INC. and :    14 CV 5449 (NAR)
RAY SHILBER, :

                Plaintiffs, :

                          :
              -v- :

NORTHERN LEASING SYSTEMS, INC., MBF :
LEASING, LLC, LEASE FINANCE GROUP, LLC, :
LOUIS CUCINOTTA, JENNIFER CENTENO a/k/a :
JENNIFER NUGENT, JAY COHEN, SARA :
KRIEGER, JOSEPH I. SUSSMAN, and JOSEPH I. :
SUSSMAN, P.C., :

                Defendants. :

———————————————————————— x


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

**MOSES & SINGER LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 554-7800

*Attorneys for Defendants*

Of Counsel:

Robert D. Lillienstein, Esq.
Scott E. Silberfein, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 5

ARGUMENT ..................................................................................................................... 5

I. THE STANDARD UNDER FED. R. CIV. P. 12(B)(6), 8(A) AND 9(B) ...................... 5

    A. Lumping Defendants Together Violates Rules 9(b) and 8(a) ............................... 7

II. THE RICO CLAIMS OF PLAINTIFFS GLASGOW, MOORE AND NORRIS
ARE BARRED BY RES JUDICATA .......................................................................... 10

III. RICO CLAIMS PREMISED ON PREDICATE ACTS OF EXTORTION
SHOULD BE DISMISSED .......................................................................................... 16

IV. THE FCRA AND NY FCRA CLAIMS ASSERTED BY PLAINTIFFS MOORE
AND RIVERA ARE BARRED BY THE STATUTE OF LIMITATIONS .................. 17

V. THE INACCURATE REPORTING CLAIMS OF SIX OF THE PLAINTIFFS
SHOULD BE DISMISSED .......................................................................................... 18

VI. THE CLAIMS FOR NEGLIGENT VIOLATIONS OF THE FCRA AND THE
NY FCRA SHOULD BE DISMISSED ........................................................................ 18

VII. COUNTS VII AND VIII SHOULD BE DISMISSED TO THE EXTENT THAT
THEY PURPORT TO ALLEGE VIOLATIONS OF GBL §380-B(B) ......................... 21

VIII. THE GBL §349 SHOULD BE DISMISSED ............................................................... 22

    A. The GBL §349 Claim Does Not Have A Broad Impact On Consumers At
Large ..................................................................................................................... 22

    B. Plaintiffs' GBL §349 Claims Are Preempted By The FCRA To The Extent
That They Are Based On Allegations Of Inaccurate Reporting ........................... 23

    C. GBL §349 Provides No Remedy To Consumers Who Were Not Deceived
In New York .......................................................................................................... 24

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*4 K & D Corp. v. Concierge Auctions, LLC*,
   No. 13-CV-2527, 2014 WL 904451 (S.D.N.Y. Mar. 10, 2014) ...............................24

*Addie v. Ocwen Loan Servicing, LLC*,
   No. 12-CV-256, 2012 WL 2508024 (D. Minn. June 28, 2012) .............................17

*Aldrich v. Northern Leasing Systems, Inc.*,
   2009 WL 889959 (Sup. Ct. N.Y. Co. Mar. 12, 2009) .............................................22

*Andrea Doreen Ltd. v. Building Material Local Union*,
   282, 299 F. Supp.2d 129 (E.D.N.Y. 2004) ...........................................................16

*Angermeir v. Cohen*,
   14 F.Supp.3d 134 (S.D.N.Y. 2014) ........................................................................22

*Appalachian Enters. v. ePayment Solutions Ltd.*,
   2004 U.S. Dist. LEXIS 24657 (S.D.N.Y. Dec. 18, 2004) .........................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................4, 5

*Atuahene v. City of Hartford*,
   10 Fed. App'x 33 (2d Cir. 2001) ..........................................................................7, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................................4, 5

*Ben Hur Moving & Storage, Inc. v. The Better Bus. Bureau of Metro. N.Y., Inc.*,
   No. 08-CV-6572, 2008 WL 4702458 (S.D.N.Y. Oct. 3, 2008) ..................................6

*Brown v. Felsen*,
   442 U.S. 127 (1979) .............................................................................................10

*Cruz v. FXDirectDealer, LLC*,
   720 F.3d 115 (2d Cir. 2013) .................................................................................24

*Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*,
   758 F.Supp.2d 153 (E.D.N.Y. 2010), aff'd 443 Fed. Appx. 582 (2d Cir. 2011) ....................16

*DeBlasio v. Merrill Lynch & Co., Inc.*,
   No. 07-CV-318, 2009 WL 2242605 (S.D.N.Y. July 27, 2009) .............................6, 7

*Denton v. Hernandez*,
    504 U.S. 25, 112 S.Ct. 1728 (1992)....................................................................5

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir.1987)........................................................................7,8

*Donelli v. County of Sullivan*,
    No. 07-CV-2157, 2009 WL 2365551 (S.D.N.Y. July 31, 2009)....................6

*Elias v. City of New York*,
    No. 10-CV-5495, 2010 WL 5475809 (E.D.N.Y. Dec 30, 2010)....................8

*Federated Dep't Stores, Inc. v. Moitie*,
    452 U.S. 394 (1981)..................................................................................10

*Feinstein v. Resolution Trust Corp.*,
    942 F.2d 34 (1st Cir. 1991).........................................................................9

*Feirstein v. Nanbar Realty Corp.*,
    963 F.Supp. 254 (S.D.N.Y. 1997)...............................................................10

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013).........................................................................5

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
    98 N.Y.2d 314 (2002).............................................................................23, 24

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)...........................................................................5

*Hernandez v. Ballesteros*,
    333 F.Supp.2d 6 (D.P.R. 2004), *affirmed*, 449 F.3d 240 (1st Cir. 2006)................9

*In re Aegis Realty Corp.*,
    301 B.R. 116 (Bankr. S.D.N.Y. 2003)........................................................10

*In re Integrated Res. Real Estate, Ltd. P'ships Sec. Litig.*,
    850 F.Supp. 1105 (S.D.N.Y. 1993)..............................................................6

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd mem.*, 113 F.3d 1229 (2d Cir. 1997)................6

*Kaufman v. Sirius XM Radio, Inc.*,
    No. 11-CV-0121, 2012 WL 1109397 (2d Cir. Apr. 4, 2012)........................24

*Lease Fin. Group, LLC v. Moore*,
    42 Misc.3d 135(a), 984 N.Y.S.2d 632, 2014 WL 300800, 2014 NY Slip Op 50074
    (Sup. Ct. App.T Jan. 28, 2014).................................................................13

*Leviton Mfg. Co., Inc. v. Reeve*,
    No. 11-CV-6238, 2013 WL 504020 (E.D.N.Y. Feb. 7, 2013, amended Mar. 23, 2013) ..........7

*Lippe v. Bairnco Corp.*,
    225 B.R. 846, 1998 U.S. Dist. LEXIS 16060 (S.D.N.Y. 1998) ................................................7

*Louisiana Stadium & Exposition Dist. v. Financial Guar. Ins. Co.*,
    701 F.3d 39 (2d Cir. 2012)........................................................................................................5

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986)....................................................................................................4, 7

*Lundy v. Catholic Health Sys. Of Long Island Inc.*,
    711 F.3d 106 (2d Cir. 2013)......................................................................................................6

*Magi XXI, Inc. v. Stato Della Città Del Vaticano*,
    22 F.Supp 3d 195 (E.D.N.Y. 2015) .......................................................................................11

*MBF Leasing, LLC v. Norris*,
    N.Y. City Civil Ct., Index No. 4496/2013, Decision/Order dated May 12, 2014 ..................12

*Marcilis v. Township of Redford*,
    693 F.3d 589 (6th Cir. 2012) ....................................................................................................8

*Medina v. Bauer*,
    2004 WL 136636 (S.D.N.Y. Jan 27, 2004) ............................................................................7

*Mendy v. JP Morgan Chase & Co.*,
    No. 12-CV-8252, 2014 WL 1224549 (S.D.N.Y. Mar. 24, 2014)...........................................23

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993)......................................................................................................9

*Nakahara v. Bal*,
    No. 97-CV-2027, 1998 WL 35123 (S.D.N.Y. Jan. 30, 1998) ................................................16

*NLRB v. United Technologies Corp.*,
    706 F.2d 1254 (2d Cir. 1983)..................................................................................................10

*Northern Leasing Systems, Inc. v. Glasgow*,
    N.Y. City Civil Ct., Index No. 020025/13, Decision/Order dated March 28, 2014 ..............13

*Novak v. Experian Information Solutions, Inc.*,
    782 F.Supp.2d 617 (N.D. Ill. 2011) ..................................................................................18, 19

*Nowlin v. Avis Budget Group*,
    11-CV-511, 2011 WL 7087108 (M.D.N.C. Dec 22, 2011)....................................................18

iv

*Nowlin v. Avis Budget Group*,
 11-CV-511, 2012 WL 204162 (M.D.N.C. Jan 24, 2012) .......................................................18

*Ochre LLC v. Rockwell Architecture Planning and Design, P.C.*,
 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) ..........................................................................8

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
 85 F.Supp.2d 282 (S.D.N.Y.2000).........................................................................................7

*Okocha v. HSBC Bank USA, N.A.*,
 700 F. Supp. 2d 369 (S.D.N.Y. 2010)...................................................................................23

*Ritchie v. Northern Leasing Sys., Inc.*,
 12-CV-4992, 2014 WL 1303440 (S.D.N.Y. Mar. 31, 2014)......................................18, 19, 20

*Ruffin-Thompkins v. Experian Information Solutions, Inc.*,
 422 F.3d 603 (7th Cir. 2005) ...............................................................................................18

*Saud v. Bank of New York*,
 929 F.2d 916 (2d Cir. 1991).............................................................................................10, 14

*Scott v. Real Estate Fin. Grp.*,
 183 F.3d 97 (2d Cir. 1999)...................................................................................................18

*Smith v. RJM Acquisitions*, LLC,
 No. 14-CV-186, 2014 WL 3107291 (W.D.N.Y. July 7, 2014) ...............................................23

*Southerland v. New York City Housing Authority*,
 2010 WL 4916935 (E.D.N.Y. Nov 23, 2010)...........................................................................8

*Spool v. World Child Int'l Adoption Agency*,
 520 F.3d 178 (2d Cir. 2008)..................................................................................................10

*Tribeca Lending Corp. v, Crawford*,
 2010 WL 9432679 (2010).....................................................................................................12

*Young v. Harbor Mortor Works, Inc.*,
 2009 WL 187793 (N.D.Ind. Jan 27, 2009) ...........................................................................19

**STATUTES**

15 U.S.C. §1681a .....................................................................................................................20

15 U.S.C. § 1681b(a)(3)(A) .......................................................................................................15

15 U.S.C. §1681o........................................................................................................................18

15 U.S.C. § 1681o(a) ................................................................................................................20

15 U.S.C. §1681p ................................................................................................3, 17

15 U.S.C. §1681s–2 ..................................................................................................23

15 U.S.C. §1681t (b)(1)(F) ......................................................................................23

18 U.S.C. §1962 *et seq.* ...........................................................................................1

28 U.S.C. §1738 ......................................................................................................14

N.Y. General Business Law, §349............................................................... passim

N.Y. General Business Law, §380-b(b)......................................................... passim

**OTHER AUTHORITIES**

N.Y. Governor's Approval Memorandum No. 45, May 1, 1970, p.1.....................20, 21

N.Y. State Senate Bill S1525 Debates (L. 1977 Ch. 867) ......................................20, 21

**PRELIMINARY STATEMENT**

Defendants Northern Leasing Systems, Inc. ("Northern"), MBF Leasing, LLC ("MBF"), Lease Finance Group, LLC ("LFG"), Louis Cucinotta ("Cucinotta"), Jennifer Centeno a/k/a Jennifer Nugent ("Centeno"), Jay Cohen ("Cohen"), Sara Krieger ("Krieger"), Joseph I. Sussman ("Sussman"), and Joseph I. Sussman, P.C ("JIS PC"), by their counsel, Moses & Singer LLP, submit this memorandum of law in support of Defendants' motion to dismiss the First Amended Complaint ("FAC") (dkt #4) in this action. The FAC purports to assert claims under the Racketeer Influenced Corrupt Organizations (RICO) statute, 18 U.S.C. §1962 *et seq.*, under the federal Fair Credit Reporting Acts ("FCRA") and its New York State counterpart ("NY FCRA"), under section 349(a) of the New York General Business Law ("section 349(a)"), and for common law fraud.

The RICO claims in the FAC (Counts I and II) should be dismissed for several reasons. First, the RICO claims asserted by Plaintiffs Glasgow, Moore and Norris are barred by the doctrine of *res judicata*. Each of these Plaintiffs was a defendant in an action in the New York City Civil Court to collect amounts due under personal guarantees of equipment leases that they now claim were forged. Each of those actions resulted in a judgment enforcing the guaranty. Moreover, each of these Plaintiffs made the same allegations of forgery that they make here, and those allegations were rejected by the Civil Court. The judgments against these Plaintiffs therefore serve as a complete bar to their current claims. Second, the FAC generally fails to meet the notice pleading requirements of Rule 8(a) and the heightened pleading standard of Rule 9(b) because it lumps defendants together, fails to distinguish between the conduct of each of the defendants, and therefore does not plausibly allege that each defendant engaged in the acts alleged. Third, the RICO claims based on predicate acts of extortion are without merit because

the commencement of even meritless litigation does not amount to extortion under federal or state law.

To state a claim for negligent violations of FCRA and NY FCRA, a pleading must contain non-conclusory allegations of actual damages arising from the violation. Here, the FAC contains only conclusory allegations of damages. In addition, some of the damages alleged - i.e. attorneys fees incurred defending lawsuits in the N.Y.C. Civil Court - arose, if at all, from conduct entirely separate from the alleged FCRA violations involving credit reports. Accordingly, Counts IV, VI, VIII and X of the FAC, which allege negligent violations of either the FCRA or the NY FCRA, should be dismissed.

Counts V, VI, IX and X purport to state claims under the FCRA and the NY FCRA based on Defendants' alleged failure to investigate and correct an inaccurate entry in a credit report. Those claims should be dismissed because the FAC does not allege two essential elements of that claim: that Plaintiffs Higgins, Moore, Norris, Rivera, Schilber and Schilco, Inc. notified a credit reporting agency ("CRA") of an alleged error in reporting and that the CRA notified one or more of the Defendants.

The claims asserted in Counts V, VI, IX and X are also insufficient under Fed. R. Civ. P. Rule 8(a) because they fail to identify which of the Defendants is allegedly responsible for the alleged violations. Throughout the FAC, Plaintiffs make the same implausible blunderbuss allegations against all "defendants" without distinguishing what each of them allegedly did. For example, paragraph 202 of the FAC alleges, upon information and belief, that "*Defendants* were informed by the credit reporting agencies that such Plaintiffs disputed the accuracy of the information *Defendants* had provided to credit reporting agencies." Paragraph 203 then alleges that "*Defendants* willfully failed, neglected or refused to review all relevant information

purportedly provided by such credit reporting agencies. . . ."  Similar allegations are made in Count VI, IX and X.  These allegations are insufficient under Rule 8(a).

The FCRA and NY FCRA claims asserted by Plaintiffs Higgins and Moore in Counts III through X of the FAC should be dismissed because they are barred by the applicable statutes of limitations.  The statute of limitations for claims under FCRA run from the earlier of two years from the discovery of the violation, or five years from the date of the violation.  15 U.S.C. §1681p.  The statute of limitations for claims under NY FCRA is generally two years from the date on which the liability arises.  The FAC alleges the claims of plaintiffs Higgins and Moore arose more than five years prior to the commencement of this litigation.

To the extent that Plaintiffs' New York impermissible access claims (Counts VII and VIII) are based on allegations that Defendants failed to provide Plaintiffs with the notice required by N.Y. G.B.L. §380-b(b), those allegations fail to state a viable claim.  GBL §380-b(b) is a consumer protection statute that affords protection only to New York consumers.  Because none of the Plaintiffs in this action is a New York consumer, none of them may assert a claim for violation of GBL §380-b(b).

Count XI purports to allege a violation of N.Y. General Business Law, §349 on behalf of all Plaintiffs.  There are several reasons why Count XI should be dismissed.  First, the FAC does not allege deceptive acts or practices that have a broad impact on consumers at large.  The facts alleged in the FAC affect nothing more than the eight Plaintiffs in this case.  Second, none of the Plaintiffs is a resident of New York, and none of them claims to have been deceived in New York.  Third, to adequately plead a claim under Section 349 a plaintiff must allege that he or she was deceived or misled by the alleged deceptive practice and suffered an injury as a result.  Plaintiffs' Section 349 claim fails because Plaintiffs have not alleged that they were personally deceived by Defendants' alleged deceptive practices.  In fact, three of them affirmatively allege

that they were not deceived.  FAC, ¶36 (Aghaeepour), ¶¶62, 72 (Glasgow), ¶¶77 (Higgins), ¶¶96.

Fourth, to the extent that Plaintiffs' Section 349 claims are premised on Defendants' allegedly

false reporting to CRAs, those claims are preempted by the FCRA.

Count XII of the FAC, for common law fraud, should be dismissed because it alleges the

elements of a fraud claim in purely conclusory fashion, in violation of Fed. R. Civ. P. 9(b).

FAC, ¶¶, 237-241.  *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996).[1]  "Allegations that

are conclusory or unsupported by factual assertions are insufficient."  *Luce v. Edelstein*, 802 F.2d

49, 54 (2d Cir. 1986).   There is not one non-conclusory fact alleged that would give rise to a

cause of action for fraud.  *Channel Master Corp. v. Aluminum Ltd. Sales*, 4 N.Y.2d 403, 406-

407, 176 N.Y.S.2d 259, 151 N.E.2d 833 (N.Y. 1958).  Plaintiff's common law fraud claim does

not specify the content of any fraudulent communications to any Plaintiff, who sent them, where

and when they took place, that Plaintiff reasonably relied on them, or why they were fraudulent.

The pleading also fails to comply with the specificity requirements of Fed. R. Civ. P. 9(b) by

impermissibly lumping all Defendants together.

## STATEMENT OF FACTS

The plausible allegations of the FAC must be accepted as true for purposes of this

motion.  They will be repeated here where pertinent to the argument.

## ARGUMENT

**I.      THE STANDARD UNDER FED. R. CIV. P. 12(b)(6), 8(a) AND 9(b)**

To survive a Fed. R. Civ. P. Rule 12(b)(6) motion to dismiss, the complaint must plead

"'enough facts to state a claim to relief that is plausible on its face.'"  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In *Iqbal*, 556

---

[1]   The Complaint must "(1) detail the statements (or omissions) that the plaintiff contends are
fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made,
and (4) explain why the statements (or omissions) are fraudulent." *Id.*

U.S. at 679, the Supreme Court set forth a "two-pronged approach" to evaluate the sufficiency of a complaint under Fed. R. Civ. P. 8(a). "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks and alterations omitted); *Louisiana Stadium & Exposition Dist. v. Financial Guar. Ins. Co.*, 701 F.3d 39 (2d Cir. 2012). Thus, a court considering a motion to dismiss should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. After identifying such pleadings, the Court next "should determine whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief." Hayden *v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted). "'The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.*, quoting *Iqbal*, 556 U.S. at 678; *see also Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013), quoting *Iqbal*, 556 U.S. at 678). A claim is facially plausible only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). When a pleading makes allegations that are equally consistent with lawful conduct and unlawful conduct it "stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557, quoting *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55-56 (1st Cir. 1999)). A court may also dismiss a claim as "factually frivolous" if the sufficiently well-pleaded facts are "clearly baseless" – that is, if they are "fanciful," "fantastic," or "delusional." *Denton v. Hernandez*, 504 U.S. 25, 32–33, 112 S.Ct. 1728, 1733 (1992), *quoting Neitzke v. Williams*, 490 U.S. 319, 325, 327, 328, 109 S.Ct. 1827 (1989) (quotation marks omitted).

The RICO and common law fraud causes of action in the FAC (Counts I, II and X) are governed by the more heightened pleading requirements of Fed. R. Civ. P. 9(b) ("Rule 9(b)"). *Donelli v. County of Sullivan*, 2009 WL 2365551, at *2 (S.D.N.Y. July 31, 2009), citing *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999); *Lundy v. Catholic Health Sys. Of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013)). Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) therefore requires a RICO complaint based on predicate acts involving fraud to "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made and identify those responsible for the statements." *Ben Hur Moving & Storage, Inc. v. The Better Bus. Bureau of Metro. N.Y., Inc.*, No. 08 Civ. 6572, 2008 WL 4702458, at *1 (S.D.N.Y. Oct. 3, 2008), quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989)). "'Allegations that are conclusory or unsupported by factual assertions are insufficient.'" *DeBlasio v. Merrill Lynch & Co., Inc.*, 2009 WL 2242605, at *10 (S.D.N.Y. July 27, 2009), quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98-99 (2d Cir. 2007).

Further, Courts within this Circuit carefully scrutinize civil RICO claims. "Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (internal quotations and citation omitted), *aff'd mem.*, 113 F.3d 1229 (2d Cir. 1997). A careful examination of a RICO complaint is necessary to separate a valid claim from one that is "nothing more than an ordinary fraud case clothed in Emperor's trendy garb." *In re Integrated Res. Real Estate, Ltd. P'ships Sec. Litig.*, 850 F.Supp. 1105, 1148 (S.D.N.Y. 1993).

**A.    Lumping Defendants Together Violates Rules 9(b) and 8(a)**

Under Rule 9(b), "[w]here multiple defendants are asked to respond to allegations of

fraud, the complaint should inform each defendant of the nature of his alleged participation in the

fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987);

*accord Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,* 85 F.Supp.2d 282, 293

(S.D.N.Y.2000), citing *Ellison v. Am. Image Motor Co.*, 36 F.Supp.2d 628, 640 (S.D.N.Y.1999),

*aff'd*, 2 Fed. Appx. 109 (2d Cir. 2001) ("When fraud is alleged against multiple defendants, a

plaintiff must plead with particularity by setting forth separately the acts or omissions

complained of *by each defendant*") (emphasis added); *DiBlasio*, 2009 WL 2242605, at *13 (each

defendant named in the complaint is entitled to be apprised of the circumstances surrounding the

fraudulent conduct with which he individually stands charged). *Luce*, 802 F.2d at 54.

"'[L]umping' all defendants together fails to satisfy the particularity requirement.'" *Leviton Mfg.

Co., Inc. v. Reeve*, 11-Civ.-6238, 2013 WL 504020 (E.D.N.Y. Feb. 7, 2013), (amended Mar. 23,

2013), quoting *In re Crude Oil Commodity Litig.*, No. 06 Civ 6677, 2007 WL 1946553, at *6

(S.D.N.Y. June 28, 2007).

Under Fed. R. Civ. P. 8(a), Plaintiffs may not merely "lump [ ] all the defendants together

in each claim and provid[e] no factual basis to distinguish their conduct." *See Atuahene v. City

of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001); *see also Lippe v. Bairnco Corp.*, 225 B.R. 846,

1998 U.S. Dist. LEXIS 16060, at *39 (S.D.N.Y. 1998) ("plaintiffs cannot simply 'lump' all the

defendants together and allege that the purported acts of every defendant can be imputed to every

other defendant").  Where a complaint names multiple defendants, that complaint must provide a

plausible factual basis to distinguish between the conduct of each of the defendants. *Medina v.

Bauer*, 2004 WL 136636 at *6 (S.D.N.Y. Jan 27, 2004) ("By lumping all the defendants together

and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the

requirements of Rule 8. Specifically, the allegations fail to give adequate notice to these defendants as to what they did wrong). *See also Elias v. City of New York*, 2010 WL 5475809 at *3 (E.D.N.Y. Dec 30, 2010); *Southerland v. New York City Housing Authority*, 2010 WL 4916935 at *3 (E.D.N.Y. Nov 23, 2010); *Marcilis v. Township of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (applying *Atuahene* in the context of a civil rights complaint against multiple defendants).

In *Ochre LLC v. Rockwell Architecture Planning and Design, P.C.*, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012), Judge Forrest dismissed a copyright infringement complaint with prejudice because the plaintiff's amended complaint continued to lump all defendants together after being warned that such practice violated Rule 8(a):

> Ochre lists a number of undifferentiated allegations in the SAC. For instance, the SAC alleges "defendants" gave an "express understanding" that Ochre would win the full purchase order (SAC ¶ 46); that "defendants" used "Ochre's design [s] ... to procure unlicensed copies or 'knockoffs' ", (SAC ¶ 84); and that "defendants ... have actually held out the chandeliers utilized at the Cosmopolitan as authentic Ochre creations in communications to the public, in response to inquiries and otherwise." (SAC ¶ 89) …. **Such "lumping" of allegations is exactly what the Second Circuit warned against in *Atuahene* and *Simmons*; plaintiff cannot force the various defendants to guess at the nature of its claims. Plaintiff thus fails to allege plausible facts supporting its claim of a copyrightable design or conduct by each individual defendant constituting wrongful copying.**

*Id.* at *6-7 (emphasis added).

A significant number of the allegations in the FAC fail to meet these standards. For example, paragraph 144 of the FAC lists fifteen mailings that were allegedly made by all nine "Defendants." Similarly, paragraph 150 of the FAC lists twenty-two uses of interstate wires that were allegedly made by all "Defendants." Instead of identifying which Defendant made which alleged misrepresentations, Plaintiffs lump all Defendants together, as if they each made every one of the mailings and wires identified in FAC. An allegation that "Defendants" collectively committed mail fraud cannot satisfy the RICO pleading standard. *DiVittorio v. Equidyne*

*Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (dismissing the Amended Complaint as to certain individual defendants where the claims were "pleaded against the defendants generally, with little or no specification as to individual roles"); *Hernandez v. Ballesteros*, 333 F.Supp.2d 6, 11 (D.P.R. 2004), *affirmed*, 449 F.3d 240 (1st Cir. 2006) ("Plaintiff fails to indicate which fraudulent statements were made by which Co-defendant, when such statements were made, and whether those statements were made on the telephone or in person. Other sister districts have found that similarly pleaded allegations do not meet the standard for a RICO Act claim under Rule 9(b). . . . We could not agree more."); *Appalachian Enters. v. ePayment Solutions Ltd.*, 2004 U.S. Dist. LEXIS 24657, at *21 (S.D.N.Y. Dec. 18, 2004) (dismissing plaintiff's complaint because "[t]he complaint in this case does not identify any particular defendant that committed any specific act of wrongdoing against plaintiff. Rather, the complaint simply attributes the wrongful acts as being committed collectively by the seventeen defendants"). "It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial." *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991).

Moreover, although the dates of the mailings and wires, and the address to which the alleged mailings were sent are given, virtually none of the other required details are alleged. FAC, ¶¶144, 150. The content of the items mailed, and how each of the items was false and misleading, are not alleged and Plaintiffs do not allege who made the misrepresentations. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir.1993) ("[A]llegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and why they were fraudulent"); *see also Knoll,* 275 Fed. Appx. at 51; *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008); *Feirstein v. Nanbar Realty Corp.*, 963 F.Supp. 254 (S.D.N.Y. 1997).

## II. THE RICO CLAIMS OF PLAINTIFFS GLASGOW, MOORE AND NORRIS ARE BARRED BY *RES JUDICATA*

Under the doctrine of *res judicata*, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981); *see Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2d Cir.1983); *Saud v. Bank of New York*, 929 F.2d 916, 918-19 (2d Cir. 1991). Moreover, "'[a] judgment of a court having jurisdiction of the parties and of the subject matter operates as *res judicata*, in the absence of fraud or collusion, <u>even if obtained upon a default</u>.'" *Saud*, 929 F.2d at 919 (emphasis added), quoting *Morris v. Jones*, 329 U.S. 545, 550-51, 67 S.Ct. 451, 455, 91 L.Ed. 488 (1947). *Accord In re Aegis Realty Corp.*, 301 B.R. 116, 119 (Bankr. S.D.N.Y. 2003), citing 18A Wright, Miller & Cooper, Federal Practice and Procedure § 4442 at 236 (2d ed. 2003) ("Valid default judgments establish claim and defense preclusion [res judicata ] in the same way as litigated judgments, and are equally entitled to enforcement in other jurisdictions.").

The current claims asserted by Plaintiffs Glasgow, Norris and Moore are barred by the *res judicata* doctrine. Each of them was sued in the New York City Civil Court, by either Northern or MBF or LFG, in an action seeking to enforce the lessor's rights under an equipment finance lease that each of these individuals signed as personal guarantor. Copies of the complaints in each of those actions is annexed to the accompanying Declaration of Robert D. Lillienstein, dated February 9, 2015 ("Lillienstein Dec.") as Exhibits A-1 (Glasgow), B-1 (Norris) and C-1 (Moore). In each case, the lessor obtained a default judgment against the personal guarantor (Plaintiffs herein). Certified copies of those judgment are annexed to the accompanying Lillienstein Dec. as Exhibits A (Glasgow), B (Norris) and C (Moore). Those judgments establish that the personal guarantee that each of these Plaintiffs now claims to be a

forgery is fully enforceable, that each Plaintiff defaulted in making the payments due thereunder, and that the lessor (Northern, MBF or LFG) had the right to recover the amounts due under those guarantees. In each case, the existence of the judgment bars all of the claims asserted in the instant action, which involve allegations that the Civil Court actions were "fraudulent" and that the "documents underlying Defendants' claims against Plaintiffs were forged." FAC, ¶1.[2]

Under the doctrine of *res judicata*, the judgments against Plaintiffs Glasgow, Norris and Moore would bar their current claims even if they had not actually asserted the claims of fraud and forgery that they now assert in this case, because a final judgment precludes the parties from relitigating issues that were *or could have been raised in that action*. *Magi XXI, Inc. v. Stato Della Città Del Vaticano*, 22 F.Supp.3d 195, 201 (E.D.N.Y. 2015). But here, the defense of *res judicata* is even stronger, because Plaintiffs Glasgow, Norris and Moore actually did make the same allegations of fraud and forgery that they now seek to make again. In each case, their allegations of fraud and forgery were rejected by the Civil Court.[3]

The FAC admits that there is a judgment against Norris, that she sought to vacate the judgment in the New York City Civil Court, and that her motion to vacate was denied. FAC,

---

[2] Paragraph 1 of the FAC states that "[t]his action is based on allegations that Defendants commenced fraudulent lawsuits in New York City Civil Court" and that "Defendants were well aware well before bringing (or threatening) such actions that the documents underlying Defendants' claims against Plaintiffs were forged and/or that Defendants never had a claim." FAC, ¶1. Plaintiffs Glasgow, Norris and Moore make similar allegations concerning about themselves. Glasgow alleges that the complaint that Northern filed against her in the New York City Civil Court "sought recovery of a personal guaranty under an alleged lease . . . [that] carried the forged signature of Ms. Glasgow." FAC, ¶68. Moore alleges that the "Enterprise manufactured two leases with Mr. Moore as a guarantor" (FAC, ¶91) and that "Defendants brought two lawsuits in New York City Civil Court through the Sussman Defendants and obtained default judgments based upon the forged leases." FAC, ¶92. Norris alleges that "the Enterprise manufactured a forged lease in Ms. Norris' name" (FAC, ¶95) and that MBF commenced an action against her in the New York City Civil Court seeking "recovery of $2,888.60 under an alleged lease . . . [that] carried the forged signature of Ms. Norris." FAC, ¶101. All of the claims asserted in this action are premised on the alleged invalidity of the leases that were judicially determined to be valid and enforceable by the New York City Civil Court.

[3] Plaintiffs Glasgow, Norris and Moore were all represented in the Civil Court by the same attorneys – Chittur & Associates, P.C. – that represent them in this action.

¶103-104. The affidavit that she submitted in support of her motion to vacate the judgment against her alleged that she is "a Texas resident with no interests or assets in New York, [that] she never saw nor signed the equipment finance lease, [that] her signature is a forgery, and that such signature has been transposed from elsewhere."[4] *MBF Leasing, LLC v. Norris*, N.Y. City Civil Ct., Index No. 4496/2013, Decision/Order dated May 12, 2014 (copy annexed to Lillienstein Dec. as Exh. D). She also claimed that "plaintiff [MBF] obtained her personal information by fraudulent inducement, [and] manufactured a forged lease in her name allegedly entered into in Texas . . .." *Id.* Norris's motion to set aside the judgment against her was denied. *Id.*; FAC, ¶104.

Plaintiff Glasgow admits that there is a judgment against her enforcing her personal guaranty of an equipment lease, that she moved to vacate that judgment, and that her motion was denied. FAC, ¶73. In the affidavit that she submitted in support of her motion to vacate the judgment in the New York City Civil Court, she claimed that "the alleged lease that Plaintiff has obtained a judgment upon is a forgery. My signature has been transposed from elsewhere."[5]

---

[4] Norris' forgery claim is one of several known instances in which a party represented by Chittur & Associates, P.C. presented what appears to be a concocted forgery theory based on an unsupported allegation that the person's signature was "transposed" from elsewhere. In *Tribeca Lending Corp. v, Crawford*, 2010 WL 9432679 (2010), Chittur & Associates, P.C. submitted an appeal brief in which they argued that "Plaintiff's representative obtained her specimen signatures at JFK airport on December 11, 2004, in a break between flights" and that the Plaintiff "transposed these signatures onto the Mortgage and an underlying note." 2010 WL 9432679 at *6. The Appellate Division of the New York State Supreme Court had no difficulty rejecting that unsupported claim, holding that Crawford "failed to establish that the plaintiff procured the judgment of foreclosure and sale by fraud, misrepresentation, or other misconduct." 79 A.D.3d at 1020, 916 N.Y.S.2d at 118 (2010). As discussed further below, Plaintiff Moore also claimed that his signature had been "transposed from elsewhere" in support of his motion to vacate the default judgment against him. The Civil Court rejected that unsupported claim, as did the Appellate Term of the Supreme Court on appeal from the Civil Court order. *See* Lillienstein Dec., Exhs. G and H.

[5] In her affidavit, Ms. Glasgow also alleged that "Plaintiff is a predatory lessor, a part of the group of companies whose nationwide fraudulent scheme is the subject of a class action in the Supreme Court of the State of New York, Pludeman v. Norhern [sic] Leasing Systems, Inc., 101059/2004 . . .." It bears noting that on December 19, 2014, the New York State Supreme Court in *Pludeman* decertified the class after 17 days of trial, finding that the affidavits submitted by each of the four class representatives in

The Civil Court denied Glasgow's motion to vacate her default judgment.  *Northern Leasing Systems, Inc. v. Glasgow*, N.Y. City Civil Ct., Index No. 020025/13, Decision/Order dated March 28, 2014 (copy annexed to Lillienstein Dec. as Exh. E).  The Civil Court also denied Glasgow's motion for reargument.  *Northern Leasing Systems, Inc. v. Glasgow*, N.Y. City Civil Ct., Index No. 020025/13, Decision/Order dated April 30, 2014 (copy annexed to Lillienstein Dec. as Exh. F).

Plaintiff Moore admits that there is a judgment against him, that he moved to vacate that judgment, and that his motion to vacate that judgment was denied.  FAC, ¶92.  What he doesn't allege is that he was also unsuccessful on appeal from the order denying his motion to vacate (*Lease Fin. Group, LLC v. Moore*, 42 Misc.3d 135(a), 984 N.Y.S.2d 632, 2014 WL 300800, 2014 NY Slip Op 50074 (Sup. Ct. App.T. Jan. 28, 2014) (copy annexed to Lillienstein Dec. as Exh. G), and that his subsequent motion to reargue the appeal was denied.  *See* Lillienstein Dec., Exh. H.  In affirming the denial of Moore's motion to vacate the default judgment against him, the Appellate Term of the Supreme Court described Moore's defense as "broad allegations of forgery and fraud – that the written agreement he admittedly signed in December 2008 covering the same subject matter that is involved in this action differed materially from the December 2008 lease/guaranty sued upon herein and that it is somehow 'clear' that what appears to be his signature on the latter document 'has been transposed from elsewhere.'"  Lillienstein Dec., Exh. G.

The judgments against Plaintiffs Glasgow, Norris and Moore establish the enforceability of the leases that each of them signed as personal guarantors, and necessarily establish that their

---

support of their earlier motions for class certification and summary judgment contained numerous inaccuracies, including inaccurate statements regarding the circumstances under which they each executed the leases in question.  *See* Lillienstein Dec., Exh. I.  The four Plaintiffs who submitted false affidavits in *Pludeman* are represented by the same attorneys that represent the Plaintiffs here, Chittur & Associates, P.C.

claims of forgery are without merit. Those judgments are entitled to full faith and credit in this Court (28 U.S.C. §1738) and Plaintiffs may not collaterally attack them as they seek to do here. Under the doctrine of *res judicata*, those judgments serve as a complete bar to all of the claims that these Plaintiffs seek to assert in this case, including Count I (RICO[6]), II (RICO conspiracy), XI (deceptive trade practices[7]) and XII (common law fraud[8]) of the FAC, because all of those claims are premised on allegations that Defendants commenced "fraudulent" lawsuits based on forged signatures. *Saud*, 929 F.2d at 919, 920) (default judgment in action on guaranty bars subsequent RICO action by guarantor).

Those judgments are also inconsistent with, and serve as a complete bar to these Plaintiffs' FCRA and NY FCRA claims, as those claims are premised on allegations that Plaintiffs did not sign a lease with any of the Defendants, and that Defendants therefore had no right to access Plaintiffs' credit reports or to report that they defaulted under the leases that they signed. *See e.g.* FAC ¶¶ 2, 76, 87-89. The judgments against Glasgow, Norris and Moore conclusively establish that these Plaintiffs did sign personal guarantees of the very same equipment leases that they now claim they didn't sign. As such, Northern, MBF and LFG each had a permissible purpose to obtain these Plaintiffs' credit reports.

An individual's personal guarantee of a business's lease obligations is a "credit transaction involving the consumer" within the meaning of 15 U.S.C. § 1681b(a)(3)(A). *See Edge v. Prof'l Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 118 (E.D.N.Y. 1999). Obtaining the

---

[6] The RICO claims are premised on allegations that the Civil Court actions were "bogus" legal proceedings based on false representations and forged documents. FAC, ¶¶1, 3, 144, 157-169 , 158.

[7] The deceptive trade practices claim is premised on allegations such as, "[n]one of the Plaintiffs signed any lease with Defendants or any of them" (FAC, ¶233); "Defendants nonchalantly misused the court system of the State of New York and the City of New York, and routinely made false and baseless statements with reckless abandon, and even after knowing the falsity of such statements." (FAC, ¶234).

[8] The common law fraud claim is based on the same allegations as the RICO claims. FAC, ¶¶237-38).

credit report of a personal guarantor is a permissible purpose under the FCRA. *Id.*; *Alexander v. Textron Fin. Corp.*, No. 3:08CV553, 2009 WL 169076 at *2-3 (S.D. Miss. Jan. 26, 2009) (obtaining credit report to review account of personal guarantor was permissible under the FCRA; court granted summary judgment dismissing impermissible access claim under the FCRA); *Baker v. American Express Travel Related Services Co., Inc.*, No. CIV.A. 02-26-JBC, 2002 WL 1205065 at *2 (W.D. Ky. May 28, 2002) (American Express had permissible purpose to pull credit report on individual who was responsible for payment of corporate debt, even if consumer did not believe he was personally liable); *cf. Breese v. TriAdvantage Credit Services*, 393 F. Supp. 2d 819, 823 (D. Minn. 2005) (obtaining credit report of co-signer of loan was permissible purpose under 15 U.S.C. §1681b(a)(3)(A)). Because the judgments against Glasgow, Norris and Moore establish that they each signed personal guarantees of an equipment lease in favor of Northern, MBF or LFG, these Defendants clearly had a permissible purpose to access these Plaintiffs' credit reports.

The judgments against Glasgow, Norris and Moore also act as a complete bar to Plaintiffs' FCRA and NY FCRA claims based on inaccurate reporting and/or failure to correct an inaccurate report (Counts V, VI, IX and X). Those judgments establish that Plaintiffs Glasgow, Norris and Moore each defaulted under the lease that they signed as personal guarantor, and that the lessor (Northern, MBF or LFG) had the right to recover the amounts due from them under that Plaintiff's personal guaranty. Accordingly, any reports that were made to a credit reporting agency stating that Plaintiffs defaulted were not "false" or "inaccurate" (FAC, ¶¶204, 210, 226, 230) and Northern, MBF and LFG therefore had no obligation to correct them.

## III. RICO CLAIMS PREMISED ON PREDICATE ACTS OF EXTORTION SHOULD BE DISMISSED

Plaintiffs allege that the filing of "bogus" lawsuits constitutes a violation of the Hobbs Act and New York's extortion statute, and that such violations are predicate acts for their RICO

claims.  FAC, ¶¶157-174.  These allegations are insufficient to state a cause of action, because

the commencement of even "meritless litigation" does not amount to extortion under federal or

state law.  *Nakahara v. Bal*, 1998 WL 35123 (S.D.N.Y. Jan. 30, 1998) ("plaintiffs' allegations

[that defendants filed baseless suits] constitute at most an incipient claim for malicious

prosecution, and that, as such, those allegations fail as a matter of law to establish the requisite

predicate acts for purposes of their asserted RICO claim"); *Curtis & Associates, P.C. v. Law*

*Offices of David M. Bushman, Esq.*, 758 F.Supp.2d 153, 173-74 (E.D.N.Y. 2010), aff'd 443 Fed.

Appx. 582 (2d Cir. 2011); *Andrea Doreen Ltd. v. Building Material Local Union*, 282, 299 F.

Supp.2d 129, 149 (E.D.N.Y. 2004).

As the Court held in *Curtis & Associates*, 758 F.Supp.2d at 173-74:

> [A]llowing the federal RICO statute to usurp underlying legitimate state court
> litigation as proposed by plaintiffs here would inappropriately bypass the state
> tribunal where the action is pending and which properly controls that
> proceeding.  Should plaintiffs' vague allegations of "phony" and "frivolous"
> litigation, "suborned perjury" and "deceit of court" have merit, plaintiffs'
> should direct such claims to the state courts where these acts are allegedly
> occurring and where the underlying litigation is still pending. This court flatly
> rejects plaintiffs' contention that "there is ... no remedy to be found in state
> courts merely by suing Bushman based on only one, or even several, of the
> seven underlying cases ...." [Citation omitted]  Rather, this court has full
> confidence that the New York State courts where the underlying litigation is
> currently pending are fully competent to address any such wrongs and this
> court is unconvinced that such issues should be re-litigated in federal court
> under the guise of a RICO action.

Under the foregoing authorities, Plaintiffs' extortion claims cannot serve as a predicate

for their RICO claims.

## IV.  THE FCRA AND NY FCRA CLAIMS ASSERTED BY PLAINTIFFS MOORE AND RIVERA ARE BARRED BY THE STATUTE OF LIMITATIONS

Counts III – X of the FAC assert claims under the FCRA and the NY FCRA.  The statute

of limitations for claims under the FCRA runs from the earlier of two years from the discovery

of the violation, or five years from the date of the violation.  15 U.S.C. §1681p.  The statute of

limitations for claims under the NY FCRA is generally two years from the date on which the

liability arises, or in certain cases, two years from the date of discovery. N.Y. G.B.L. §380-n.[9]

The federal and state impermissible access claims asserted by Plaintiffs Moore and Rivera are

time barred because the FAC alleges that Moore's claims arose on December 19, 2008 (FAC,

¶93) and that Rivera's claim arose in July 2006 (FAC, ¶116) - more than five years prior to the

date on which the claims were asserted in this case.

## V. THE INACCURATE REPORTING CLAIMS OF SIX OF THE PLAINTIFFS SHOULD BE DISMISSED

The inaccurate reporting claims asserted by Plaintiffs Higgins, Moore, Norris, Rivera,

Schilber and Schilco, Inc. (Counts V, VI, IX and X) fail to state a claim. To state a claim for

failing to correct an inaccurate report to a CRA a complaint must allege that the plaintiff notified

a CRA of the alleged error, that the CRA notified the defendant, and that the defendant failed to

correct the entry. *Addie v. Ocwen Loan Servicing, LLC*, CIV. 12-256 DWF/FLN, 2012 WL

2508024 (D. Minn. June 28, 2012). The FAC does not make the required allegations on behalf

of Plaintiffs Higgins, Moore, Norris, Rivera, Schilber and Schilco, Inc. Accordingly, Counts V,

VI, IX and X do not state a claim on behalf those of Plaintiffs.[10]

## VI. THE CLAIMS FOR NEGLIGENT VIOLATIONS OF THE FCRA AND THE NY FCRA SHOULD BE DISMISSED

Counts IV, VI, VIII and X of the FAC should be dismissed as to Plaintiffs Glasgow,

Higgins, Rivera, Schilber and Schilco because these Plaintiff don't adequately allege that they

---

[9] G.B.L. §380-n provides: "An action to enforce any liability created under this article may be brought in any court of competent jurisdiction, within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under this article to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this article, the action may be brought at any time within two years after the discovery by the individual of the misrepresentation."

[10] The FAC alleges that these claims are asserted by "certain Plaintiffs" without specifying which ones. *See* FAC, ¶¶202, 208, 226 and 230. Therefore, if the Court does not grant Defendants' motion to dismiss, it should still direct Plaintiffs to file a more definite statement of their claims in accordance with Fed.R.Civ.P. 12(e).

sustained actual damages cognizable under the FCRA or NY FCRA.[11]  Under the FCRA and NY

FCRA, a plaintiff may recover "any actual damages he sustains as a result of a negligent

violation."  15 U.S.C. §1681o.  However, the FCRA does not presume damages.  The plaintiff

bears the burden of establishing that he is entitled to damages.  *See Ruffin-Thompkins v.*

*Experian Information Solutions, Inc.*, 422 F.3d 603, 610 (7th Cir. 2005).

Although, at the motion to dismiss stage, a plaintiff need only allege facts sufficient to

plausibly suggest that she is entitled to damages, conclusory allegations that a plaintiff has

suffered damage are insufficient.  *Ritchie v. Northern Leasing Sys., Inc.*, 12-CV-4992 (KMK),

2014 WL 1303440 at *9 (S.D.N.Y. Mar. 31, 2014); *Novak v. Experian Information Solutions,*

*Inc.*, 782 F.Supp.2d 617, 623-624 (N.D. Ill. 2011) (allegation that Plaintiff "was damaged by

these violations" is insufficient to state a claim under the FCRA); *Nowlin v. Avis Budget Group*,

2011 WL 7087108 (M.D.N.C. Dec 22, 2011), Report and Recommendation adopted by *Nowlin*

*v. Avis Budget Group*, 2012 WL 204162 (M.D.N.C. Jan 24, 2012) (allegation that Plaintiff's

credit score was reduced as a result of FCRA violation was insufficient to state a claim under the

FCRA); *Young v. Harbor Mortor Works, Inc.*, 2009 WL 187793 (N.D.Ind. Jan 27, 2009) (same).

In *Ritchie*, the District Court held that to state a claim for a negligent violation of FCRA

and NY FCRA, a plaintiff must allege actual damages with more than conclusory allegations.

2014 WL 1303440 at *9:

> **the Complaint contains nothing more than conclusory allegations that**
> **Plaintiff is entitled to actual damages from Defendants' alleged negligent**
> **FCRA violations**. (See Compl. ¶ 27 ("[Plaintiff] suffered, and continues to
> suffer, actual and real monetary injury as a direct result of Defendants'
> aforesaid misconduct."), ¶ 39 ("As a result of Defendants' aforesaid
> misconduct, [Plaintiff] has sustained damages for which Defendants are

---

[11]  The Second Circuit has recognized that "the[se] two statutes must be construed in the same
way" due to the similarities between many of their provisions.  *Scott v. Real Estate Fin. Grp.*, 183 F.3d
97, 100 (2d Cir. 1999).  *Accord*, *Ritchie v. Northern Leasing Sys., Inc.*, 2014 WL 1303440 at *3 fn. 1
(S.D.N.Y. Mar. 31, 2014).

liable...."), ¶ 52 ("Defendants are liable to [Plaintiff] for the actual damages sustained by reason of the aforesaid misconduct....").) . . . **The Court therefore dismisses, without prejudice, both counts alleging negligent FCRA violations for failure to allege actual damages**. (Emphasis added).

The District Court's opinion in *Novak* is also on point. There, the court held:

> Of course, at the motion to dismiss stage, the plaintiff need only allege facts sufficient to plausibly suggest that he is entitled to damages.
>
> Plaintiff's complaint fails to satisfy that minimal requirement. Plaintiff has not provided even the slenderest of allegations to buttress the conclusion that he suffered actual damages in support of a theory of negligent violation under § 1681 o(a)(1). **He has not, for example, alleged that he was denied or lost credit or was subjected to a higher interest rate as a result of AEP's improper use of his credit report**. *See Young v. Harbor Mortor Works, Inc.*, 2009 WL 187793, at *5 (N.D.Ind. Jan. 27, 2009) (dismissing FCRA claim in which plaintiff alleged that he suffered a decrease in his credit score as a result of defendant's unauthorized request for his credit report but did not allege that he "was denied credit, lost credit, had his credit limits lowered, * * * was required to pay a higher interest rate for credit * * * [or suffered] any non-pecuniary damage such as loss of reputation or physical or mental effects" (internal citations omitted)). (Emphasis added).

782 F.Supp.2d at 623-624.

Here, the FAC provides no allegations to plausibly suggest that many of the Plaintiffs suffered damages cognizable by the FCRA. Rather, it contains the same type of conclusory allegations of actual damages that were found to be deficient in *Ritchie*. *See* FAC, ¶70-71, 74 (Glasgow), ¶90 (Higgins), ¶117 (Rivera), ¶124 (Schilber). In addition, some of the damages alleged - i.e. attorneys fees incurred defending lawsuits in the N.Y.C. Civil Court (see FAC, ¶51 [Aghaeepour], ¶71 [Glasgow], ¶84 [Higgins], ¶115 [Rivera], ¶124 [Schilber and Schilco, Inc.] - arose, if at all, from conduct entirely separate from the alleged FCRA violations involving credit reports. Ritchie, 2014 WL 1303440 at *9. Accordingly, the claims asserted by Counts IV, VI,

VIII and X of the FAC, all of which allege negligent violations of either FCRA or NY FCRA, should be dismissed as to Plaintiffs Glasgow, Higgins, Rivera, Schilber and Schilco.[12]

## VII. COUNTS VII AND VIII SHOULD BE DISMISSED TO THE EXTENT THAT THEY PURPORT TO ALLEGE VIOLATIONS OF GBL §380-b(b)

Counts VII and VIII purport to allege violations of GBL §380-b(b)[13] on behalf of all Plaintiffs. The NY FCRA affords protection to New York consumers. None of the Plaintiffs is a New York consumer. Accordingly, their claims under GBL §380-b(b) should be dismissed.

When the NY FCRA was originally enacted in 1970, the Governor's Memorandum approving the bill stated, "[t]his bill . . . establishes the Credit Data Reporting Act **to enable New Yorkers** to protect themselves against the dissemination of inaccurate information bearing on their credit worthiness and against unwarranted invasions of their privacy." New York State Governor's Approval Memorandum No. 45, May 1, 1970, p.1 (emphasis added) (copy attached to Lillienstein Dec. as Exh. J). GBL §380-b(b) was added to the NY FCRA in 1977. In presenting the bill to the Senate, the Senate Sponsor of the bill, Senator Pisani, made clear that its provisions – in particular, the provision requiring advance notice before accessing someone's credit report – were intended to apply only to New York consumers:

> I believe that we have now come up with a bill that will fairly reasonably afford to **consumers in this State** the needed protection that they need, grant

---

[12] All of the FCRA and NY FCRA claims asserted by Plaintiff Schilco, Inc. should be dismissed for the additional reason that Schilco is not a consumer; it is a California corporation. FAC, ¶12. The FCRA creates a cause of action in favor of "any consumer" who is damaged by reason of negligent noncompliance with the statute. 15 U.S.C. § 1681o(a). Under 15 U.S.C. §1681a, the term "consumer" means an individual. Because Schilco, Inc. is not a consumer, its purported claims under the FCRA and NY FCRA (Counts III-X) should be dismissed.

[13] Section 380-b(b) of the GBL provides: "No person shall request a consumer report, other than an investigative consumer report, in connection with an application made after the effective date of this article, for credit, employment, insurance, or rental or lease of residences, unless the applicant is first informed in writing or in the same manner in which the application is made that (i) a consumer report may be requested in connection with such application, and (ii) the applicant upon request will be informed whether or not a consumer report was requested, and if such report was requested, informed of the name and address of the consumer reporting agency that furnished the report. "

to them certain opportunities that they never had, and set into place a credit reporting statute regulating the collection of information about **consumers in this State**, legislation I might say that has been sorely needed.

*　　*　　*

The New York State Credit Reporting Act, which is Article 25 of the General Business Law, is the New York Statute governing the activities of credit reporting and agencies.  It was enacted before 1970, subsequently amended in 1971 and 1972.  Now we have found that both the Federal Act and the State Act were deficient in several ways.  <u>Neither the State nor the Federal Reporting Act – neither of them provide for **our consumers** to be informed in all instances that a consumer report may be reported on them.</u>

NY Senate Debate on Senate Bill S1525, at p. 14,005, 14, 007 (1977 Ch. 867) (emphasis added) (copy attached to Lillienstein Dec. as Exhibit K).

It is apparent from the Governor's Memorandum approving the NY FCRA, and from the statement of Senator Pisani, the Senate sponsor of the bill that added GBL §380-b(b) to the act, that its provisions were intended to reach only "consumers in this State" – i.e. New York consumers.  Because none of the Plaintiffs is a resident of New York, none of them may assert a claim for a violation GBL §380-b(b).[14]  Accordingly, the claims of all of the Plaintiffs should be dismissed to the extent that they purport to allege violations of GBL §380-b(b).

## VIII.　<u>THE GBL §349 CLAIM SHOULD BE DISMISSED</u>

### A.　<u>The GBL §349 Claim Does Not Have A Broad Impact On Consumers At Large</u>

GBL §349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." A person injured by such acts may bring a civil action for damages.  GBL §349 has no application to the facts alleged in the FAC.

As the District Court recently held in *Angermeir v. Cohen*, 14 F.Supp.3d 134, 156-157 (S.D.N.Y. 2014), a case involving some of the same defendants:

---

[14]  For the same reason, all of Plaintiffs' NY FCRA claims should be dismissed.

"in order to satisfy [§ 349], plaintiffs' claims must be predicated on a deceptive act or practice that is 'consumer oriented.'" *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 603 (N.Y. 1999). To be "consumer oriented," the alleged conduct "must have a broad impact on consumers at large." *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995).

The *Angermeir* court held that the GBL §349 failed to state a claim because:

> Plaintiffs' allegations primarily concern injuries they sustained from the allegedly fraudulent lawsuits Defendants filed against them individually. [Citation omitted]. And although Plaintiffs refer to "[l]itigants" in the abstract and "integrity . . . in civil proceedings" in general, (Compl. ¶ 199), these allegations are based entirely on Plaintiffs' individual claims. [Citation omitted]. The Court therefore finds that Plaintiffs have failed to plead a claim under New York's General Business Law § 349, and it grants Defendants' Motion To Dismiss that claim.

*Id.,* 14 F.Supp.3d at 157-158. *See also Aldrich v. Northern Leasing Systems, Inc.*, 2009 WL 889959 (Sup. Ct. N.Y. Co. Mar. 12, 2009) (holding that allegations that the Defendants improperly accessed the credit reports of the four plaintiffs and that Defendants falsely reported information to CRAs and failed to correct those false reports "do not have a broad impact on the public at large.").

This case involves the same type of private dispute, unique to the parties, as *Angermeir* and *Aldrich*, and does not fall within the ambit of GBL §349. For that reason, Plaintiffs' GBL §349 claim should be dismissed.

**B.    Plaintiffs' GBL §349 Claims Are Preempted By The FCRA To The Extent That They Are Based On Allegations Of Inaccurate Reporting**

To the extent that Plaintiffs' GBL §349 claims are premised on Defendants' allegations of false reporting to CRAs, they are preempted by 15 U.S.C. §1681t (b)(1)(F), which provides: "No requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under ...section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." Under this statute, where a state law claim is based on conduct that is regulated by 15 U.S.C. §1681s–2 (as is the case here ),

the State law claim cannot proceed. *Mendy v. JP Morgan Chase & Co.*, No. 12 CIV. 8252 (PGG), 2014 WL 1224549, at *6 (S.D.N.Y. Mar. 24, 2014); *Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 375 (S.D.N.Y. 2010) (dismissing two GBL §349 claims based on allegations that the Defendant failed to delete inaccurate information after notification, failed to conduct proper investigations, and reported inaccurate information, holding that such claims were pre-empted by the FCRA); *Smith v. RJM Acquisitions, LLC*, No. 14-CV-186 (JTC), 2014 WL 3107291, at *6 (W.D.N.Y. July 7, 2014) ( "[i]t is not disputed that plaintiff's claim of false or inaccurate reporting of consumer information in violation of GBL § 349 falls squarely within the subject matter regulated under § 1681s–2 of the FCRA. Accordingly, plaintiff's state law claim is preempted by 15 U.S.C. § 1681t(b)(1)(F), and defendant's motion to dismiss this claim is granted.").

### C. GBL §349 Provides No Remedy To Consumers Who Were Not Deceived In New York

GBL §349 is a New York consumer protection statute that provides no relief to anyone who claims to have been deceived and who sustained injury outside New York. *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314 (2002). Here, the allegations of the FAC make clear that any deception did not occur in New York. None of the Plaintiffs is a resident of New York. FAC, ¶¶5-12. All of them emphasize that the effectiveness of the alleged scheme was predicated on them being located far away from New York. FAC, ¶¶26-28. Similarly, all letters to and telephone calls with Plaintiffs were directed to them outside New York. *See* FAC, ¶¶144, 150.

Although *Goshen* does not "function as a *per se* bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state" (98 N.Y.2d at 325), it does make clear that GBL §349 "was not intended to police out-of-state transactions of New York companies." *Id.* In *Goshen*, the New York Court of Appeals dismissed a Florida resident's claim under GBL §349 based on allegations that the "deceptive scheme [was] contrived and implemented" in New

York, by defendants who had "extensive ties to New York and conducted business in the state." *Id.* at 321-22. In dismissing the GBL claims, the Court of Appeals held that an "allegedly deceptive scheme that originates in New York, but injures a consumer in a transaction outside the state" is not actionable under GBL §349, and that "'hatching a scheme' or originating a marketing campaign in New York [does not] in and of itself constitute an actionable deceptive act or practice under the statute. . ." *Id.* at 321, 324. Applying those principles, the court held that "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." *Id.* at 325; *accord 4 K & D Corp. v. Concierge Auctions, LLC*, No. 13-CV-2527, 2014 WL 904451 (S.D.N.Y. Mar. 10, 2014) (to state a claim under GBL, §349, the deception of consumers must occur in New York), citing *Goshen* and *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122–24 (2d Cir. 2013); *see also Kaufman v. Sirius XM Radio, Inc.*, No. 11-0121-cv, 2012 WL 1109397 (2d Cir. Apr. 4, 2012) (summary order) ("*Goshen* "forecloses" relief under GBL §349 in the absence of an "'intrastate transaction' that caused [plaintiff] harm.") *Id.* at *2.

None of the Plaintiffs is a resident of New York and none of them claim to have been deceived in New York. Therefore, to the extent that Plaintiffs claim that they were deceived outside of New York, their claims under GBL §349 fail to state a claim.

## **CONCLUSION**

For the foregoing reasons, the FAC should be dismissed.

Dated:   New York, New York
        February 9, 2015

MOSES & SINGER LLP
Attorneys for Defendants

By: _____/s/_____
       Robert D. Lillienstein
The Chrysler Building
405 Lexington Avenue
New York, New York  10174
Tel. 212-554-7800
Fax 212-554-7700