UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────── x
ELAINE AGHAEEPOUR, ASHLEY GLASGOW, :
JULIE HIGGINS, SHANE MOORE, MICHELE :
NORRIS, JESUS RIVERA, SCHILCO, INC. and : 14 CV 5449 (NAR)
RAY SHILBER, :
     Plaintiffs, :
:
     -v- :
:
NORTHERN LEASING SYSTEMS, INC., MBF :
LEASING, LLC, LEASE FINANCE GROUP, LLC, :
LOUIS CUCINOTTA, JENNIFER CENTENO a/k/a :
JENNIFER NUGENT, JAY COHEN, SARA :
KRIEGER, JOSEPH I. SUSSMAN, and JOSEPH I. :
SUSSMAN, P.C., :
:
     Defendants. :
───────────────────────────────── x

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

**MOSES & SINGER LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 554-7800

*Attorneys for Defendants*

Of Counsel:

Robert D. Lillienstein, Esq.
Valeria Castanaro, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii
PRELIMINARY STATEMENT ..................................................................................................... 1
I. THE CLAIMS ASSERTED BY GLASGOW, MOORE AND NORRIS ARE BARRED BY *RES JUDICATA* AND COLLATERAL ESTOPPEL ................................ 1
II. THE FCRA AND NYFCRA CLAIMS ASSERTED BY PLAINTIFFS MOORE AND RIVERA ARE TIME BARRED ........................................................................ 4
III. PLAINTIFFS' CLAIMS UNDER GBL §380-b(b) SHOULD BE DISMISSED BECAUSE PLAINTIFFS ARE NOT NEW YORK CONSUMERS ................................. 4
IV. PLAINTIFFS CANNOT MAINTAIN A CAUSE OF ACTION UNDER GBL §349 ............................................................................................................................ 6
V. THE FILING OF FRAUDULENT LAWSUITS IS NOT EXTORTION, AND IS NOT A RICO PREDICATE ACT ........................................................................ 7
VI. THE FAC FAILS TO ADEQUATELY ALLEGE THAT EACH DEFENDANT DIRECTED OR CONTROLLED THE AFFAIRS OF THE ENTERPRISE ..................... 8
CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**CASES**                                                                                                       Page(s)

*Aldrich v. Northern Leasing Systems, Inc.*,
  2009 WL 889959 (Sup. Ct. N.Y. Co. Mar. 12, 2009) ................................................................. 6

*Alliance Network, LLC v. Sidley Austin LLP*,
  43 Misc. 3d 848, 987 N.Y.S.2d 794 (Sup. Ct. N.Y. Co. 2014) .................................................. 3

*Allstate Ins. Co. v. Liberty Lines Transit, Inc.*,
  50 A.D.3d 712, 855 N.Y.S.2d 599 (2d Dep't 2008) .................................................................. 1

*Andrea Doreen Ltd. v. Bldg. Material Local Union 282*,
  299 F. Supp. 2d 129 (E.D.N.Y. 2004) ........................................................................................ 3

*Angermier v. Northern Leasing Systems, Inc.*,
  14 F.Supp.3d 134 (S.D.N.Y. 2014) ............................................................................................ 6

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013) ....................................................................................................... 5

*Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*,
  758 F.Supp.2d 153, aff'd 443 Fed.Appx. 582 (2d Cir. 2011) ..................................................... 7

*DaimlerChrysler Corp. v. Spitzer*,
  26 A.D.3d 88, 804 N.Y.S.2d 506, aff'd, 7 N.Y.3d 653, 860 N.E.2d 705 (2006) ....................... 5

*Eazypower Corp. v. ICC Innovative Concepts Corp.*,
  98-CV-3189, 2002 WL 31473813 (N.D. Ill. Nov. 1, 2002) ....................................................... 8

*Elliott Associates, L.P. v. Hayes*,
  141 F. Supp. 2d 344 (S.D.N.Y. 2000), *aff'd*, 26 F. App'x 83 (2d Cir. 2002) ............................ 9

*Elsevier Inc. v. W.H.P.R., Inc.*,
  692 F. Supp. 2d 297 (S.D.N.Y. 2010) ........................................................................................ 8

*Franchise Acquisitions Grp. Corp. v. Jefferson Valeey Mall Ltd. P'ship*,
  73 A.D.2d 1123 (2d Dep't 2010) ................................................................................................ 1

*In re Platinum and Palladium Commodities Litigation*,
  828 F.Supp.2d 588 (S.D.N.Y. 2011) .......................................................................................... 9

*Kraft General Foods, Inc. v. Cattell*,
  18 F. Supp.2d 280 (S.D.N.Y. 1998) ........................................................................................... 8

*Lemelson v. Wang Laboratories, Inc.*,
 874 F. Supp. 430 (D. Mass. 1994) ................................................................................. 7

*Meekins v. Town of Riverhead*,
 20 A.D.3d 399, 798 N.Y.S.2d 133 (2d Dep't 2005) ....................................................... 1

*Nakahara v. Bal*,
 No. 97-CV-2027 (DLC), 1998 WL 35123 (S.D.N.Y. 1998) .......................................... 8

*New York State Bankers Ass'n v. Albright*,
 38 N.Y.2d 430 (1975) ..................................................................................................... 5

*People v. Capparelli*,
 158 Misc. 2d 996 (Sup. Ct. N.Y. Co. 1993) .................................................................. 8

*People v. Dioguardi*,
 8 N.Y.2d 260 (1960) ....................................................................................................... 8

*Persaud v. Pharsi*,
 70 A.D.3d 660, 892 N.Y.S.2d 868 (2d Dep't 2010) ...................................................... 1

*Reves v. Ernst & Young*,
 507 U.S. 170, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993) ......................................... 8, 9

*Saud v. Bank of New York*
 929 F.2d 916, 919 (2d Cir. 1991) ............................................................................... 2, 4

*Securitron Magnalock Corp. v. Schnabolk*,
 65 F.3d 256 (2d Cir. 1995) ............................................................................................. 6

*Serin v. Northern Leasing Systems, Inc.*,
 No. 06–CV–1625 (JSG), 2009 WL 7823216 (S.D.N.Y. Dec. 18, 2009) ........................ 6

*Snyder v. U.S. Equities Corp.*,
 No. 12-CV-6092 (CJS), 2014 WL 317189 (W.D.N.Y. Jan. 28, 2014) .......................... 8

*Specialized Indus. Servs. Corp. v. Carter*,
 68 A.D.3d 750, 890 N.Y.S.2d 90 (2d Dep't 2009) ........................................................ 3

*Turkish v. Kasentz*,
 27 F.3d 23 (2d Cir. 1994) ............................................................................................... 7

*U.S. v. Brecht*,
 540 F.2d 45 (2d Cir. 1976) ............................................................................................. 8

*U.S v. Seregos*,
 655 F.2d 33 (2d Cir. 1981) ............................................................................................. 8

*U.S. v. Eisen*,
 974 F.2d 246 (2d Cir. 1992)..................................................................................................7

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
 303 F. Supp. 2d 432 (S.D.N.Y. 2004)....................................................................................8

*Viacom Int'l Inc. v. Icahn*,
 747 F. Supp. 205 (S.D.N.Y. 1990), *aff'd* 946 F.2d 998 (2d Cir. 1991).....................................7

**STATUTES**

15 U.S.C. §1681s-2...................................................................................................................7

18 U.S.C. §1962(c) ...................................................................................................................8

Fair Credit Reporting Act ..................................................................................................2, 3, 4

Fed. R. Civ. P. 8(a) ...................................................................................................................9

Fed. R. Civ. P. 9(b) ...................................................................................................................8

N.Y. C.P.L.R. §317....................................................................................................................1

N.Y. C.P.L.R. §5015(a)(1).........................................................................................................1

N.Y. General Bus. L., §349 ...............................................................................................5, 6, 7

N.Y. General Bus. L., §380-b(b) ...........................................................................................4, 5

N.Y. Judiciary L, §487..........................................................................................................3, 4

RICO ................................................................................................................................ passim

## PRELIMINARY STATEMENT

Defendants, by their attorneys Moses & Singer LLP, respectfully submit this reply memorandum in response to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion ("Pls' Mem.") and in further support of their motion to dismiss the First Amended Complaint ("FAC"). For the reasons set forth below and in Defendants Memorandum of Law In Support Of Motion To Dismiss The First Amended Complaint (Defs' Mem."), the motion should be granted.

### I. THE CLAIMS ASSERTED BY GLASGOW, MOORE AND NORRIS ARE BARRED BY *RES JUDICATA* AND COLLATERAL ESTOPPEL

In their moving papers, Defendants' established that a valid judgment operates as *res judicata* as to all issues that were raised, or that could have been raised, and that the same rule applies when the judgments were rendered upon a party's default.[1] Here, the doctrine of *res judicata* precludes relitigation of each of the claims asserted by Glasgow, Moore and Norris because the Civil Court actions against them resulted in judgments that established the enforceability of the leases that they now claim to have been forged. Moreover, in each case, the claims of forgery were actually litigated and resolved against them, when the Civil Court denied these Plaintiffs' motions to vacate the judgments based on the same claims of forgery and fraud that they now seek to assert yet again.[2] By determining that Plaintiffs' signed lease guarantees

---

[1] *See* Defs' Mem., Point II. All of the cases cited in Point II.B of Plaintiffs' Mem. are inapposite. None of them involved situations where the party opposing the application of *res judicata* actually litigated the issues that were decided, and lost. Moreover, *Franchise Acquisitions Grp. Corp. v. Jefferson Valeey Mall Ltd. P'ship*, 73 A.D.2d 1123 (2d Dep't 2010) involved a default by the Plaintiff, not the defendant. *Persaud v. Pharsi*, 70 A.D.3d 660, 661, 892 N.Y.S.2d 868 (2d Dep't 2010), *Allstate Ins. Co. v. Liberty Lines Transit, Inc.*, 50 A.D.3d 712, 713, 855 N.Y.S.2d 599 (2d Dep't 2008) and *Meekins v. Town of Riverhead*, 20 A.D.3d 399, 400, 798 N.Y.S.2d 133 (2d Dep't 2005) all involved the doctrine of law of the case, not *res judicata*.

[2] In the case of Plaintiff Glasgow, the Civil Court entered a default judgment enforcing the lease guaranty that she signed, and then denied her motion to vacate that default, rejecting her claims that "the entire transaction is permeated with fraudulent undertones and forgery" (Lillienstein Dec., Exh. E, p. 2) and that "she never signed the subject agreement even though it bears her name and signature. *Id.* In the case of Plaintiff Moore, the Civil Court granted judgment enforcing the lease guaranty signed by Moore and denied a subsequent motion to vacate the judgment pursuant to CPLR 5015(a)(1) and CPLR 317. Lillienstein Dec., Exh. G. On appeal, the Appellate Term

and are liable under those guarantees, these judgments negate an essential element of every claim being made by Plaintiffs in this case: that Defendants filed the Civil Court actions based on forged documents (RICO claims); and that Defendants had no right to access Plaintiffs' credit reports or to report that Plaintiffs defaulted in making payments because their lease guarantees were forged (FCRA and NYFCRA claims).

The *res judicata* bar applies here even though Plaintiffs didn't assert claims under RICO or FCRA in the Civil Court because the facts underlying their claims in both cases are the same. As the Second Circuit held in *Saud v. Bank of New York*:

> it does not matter that a RICO claim was not expressly asserted in the Guaranty Action, **"[f]or it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies**." [Citation omitted]; *see also In re Teltronics Servs., Inc.*, 762 F.2d 185, 193 (2d Cir.1985) **("[n]ew legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata**"). . . . Whether or not the first judgment will have preclusive effect depends in part on **whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and *whether the facts essential to the second were present in the first*.**" *United Technologies*, 706 F.2d at 1260.

929 F.2d 916, 919 (2d Cir. 1991) (italics original; emphasis added). Here, Plaintiffs' RICO and FCRA claims cannot survive if the leases were not forged. The Civil Court judgments establish that the leases were not forged. Those judgments therefore serve as a complete bar to the claims that Plaintiffs seek to assert.

In addition to being barred by *res judicata*, all of Glasgow's, Moore's and Norris's claims are barred by the related doctrine of collateral estoppel. Collateral estoppel applies when four

---

of the Supreme Court rejected the same "broad allegations of forgery and fraud" that he seeks to assert here, including his assertion that his signature on the lease "has been transposed from elsewhere." Lillienstein Dec., Exh. G. In the case of Plaintiff Norris, the Civil Court entered a default judgment and denied her motion to vacate that judgment in which she alleged that that her signature on the lease was "transposed from elsewhere" and that MBF obtained her personal information by fraudulent inducement [and] manufactured a forged lease in her name."

factors are met: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits. *Andrea Doreen Ltd. v. Bldg. Material Local Union 282*, 299 F. Supp. 2d 129, 144 (E.D.N.Y. 2004). Those factors are all present here. In each case, the Civil Court rejected the same claims of forgery that they make here and found that Plaintiffs were liable for the amounts due under the leases that they guaranteed. Those findings negate all of Plaintiffs' RICO and FCRA claims because they are premised on their previously rejected claims that the leases were forged. As the District Court held in *Andrea Doreen*:

> the fact that Doreen owed fund contributions to the Trustees for the period between 1993 and 1996 cannot be relitigated now even if the cause of action in the subsequent proceeding is different. [Citations omitted]. **Accordingly, any of Doreen's RICO claims that are negated by this factual finding cannot be litigated now**. *Cf. Benjamin*, 869 F.2d at 114 (granting collateral estoppel effect to an arbitrator's factual finding on an issue which undergirded the plaintiff's RICO claims).

299 F. Supp. 2d at 144 (emphasis added) (findings of fact in ERISA collection action barred RICO claim and claim of extortion under the Hobbs Act).

Plaintiffs' reliance on *Specialized Indus. Servs. Corp. v. Carter*, 68 A.D.3d 750, 890 N.Y.S.2d 90, 92 (2d Dep't 2009) is misplaced. In that case, the court held that an action for violations of section 487 of the Judiciary Law against an attorney are not barred by a judgment that the attorney procured based on misrepresentations to the court, if the subsequent action is a part of a larger fraudulent scheme not addressed in the prior actions. That exception does not apply here because the precise fraudulent scheme at issue here – that Defendants commenced Civil Court actions based on forged documents – was asserted by each of these Plaintiffs and rejected by the Civil Court. *Alliance Network, LLC v. Sidley Austin LLP*, 43 Misc. 3d 848, 858, 987 N.Y.S.2d 794, 803 (Sup. Ct. 2014) ("[h]ere, the alleged fraudulent scheme pertains to the

-3-

Attorney Defendants' advocacy in support of enforcing the arbitration. No greater scheme is alleged."). Plaintiffs confuse their new theory (RICO) with the facts underlying that theory (commencing actions based on forged documents). It is irrelevant that Plaintiffs now assert a RICO claim based on forged documents when the precise facts underlying that theory were at issue and decided against them in the Civil Court. *Saud*, 929 F.2d at 919.[3]

## II. THE FCRA AND NYFCRA CLAIMS ASSERTED BY PLAINTIFFS MOORE AND RIVERA ARE TIME BARRED

Rather than respond to Defendants' arguments demonstrating that Counts III – X of the FAC are time barred as to Plaintiffs Moore and Rivera, Plaintiffs make conclusory statements that these claims are timely because they were "brought within two years of discovery." (Pl. Mem. at p. 23). However, Plaintiffs' argument is contradicted by the allegations in the FAC, which demonstrate that these claims arose more than five years prior to the date on which the claims were asserted (*see* FAC, ¶¶93, 116). Accordingly, for the reasons discussed in Point IV of Defs' Mem, Counts III-X must be dismissed as to Plaintiffs Moore and Rivera.[4]

## III. PLAINTIFFS' CLAIMS UNDER GBL §380-b(b) SHOULD BE DISMISSED BECAUSE PLAINTIFFS ARE NOT NEW YORK CONSUMERS

Defendants' main brief demonstrated that the purpose of GBL §380-b(b), as reflected in its legislative history, was "**to enable New Yorkers** to protect themselves against the dissemination of inaccurate information" and to afford protection "to **consumers in this State.**" *See* Defendants Mem., at pp. 20-21 (emphasis added). Plaintiffs suggest that the Court should simply disregard this legislative history and look only at the statute. Contrary to Plaintiffs'

---

[3] All of the cases cited by Plaintiffs that involve section 487 of the Judiciary Law are distinguishable because that statute authorizes an action against an attorney who procures a judgment against another party based on misrepresentations to the Court. To conclude that the other party was barred by the judgment entered in the first action would undermine the very purpose of the statute.

[4] Plaintiffs do not dispute that the inaccurate reporting claims (Counts V, VI, IX and X) asserted by Plaintiffs Higgins, Moore, Norris, Rivera, Schilber and Schilco, Inc. should be dismissed. Similarly, Plaintiffs do not dispute that Schilco, Inc. is not a consumer, and that all of Schilco, Inc.'s FCRA and NY FCRA claims fail to state a claim.

argument, it is appropriate for the Court to look at legislative history as a guide to statutory interpretation even if the statute appears facially unambiguous. *New York State Bankers Ass'n v. Albright*, 38 N.Y.2d 430, 434, 343 N.E.2d 735, 737 (1975) ("the absence of ambiguity [on the face of a statute] is never conclusive. **Sound principles of statutory interpretation generally require examination of a statute's legislative history and context to determine its meaning and scope**") (emphasis added); *see also DaimlerChrysler Corp. v. Spitzer*, 26 A.D.3d 88, 93, 804 N.Y.S.2d 506, 509 (2005) aff'd, 7 N.Y.3d 653, 860 N.E.2d 705 (2006) ("the legislative history . . . 'is not to be ignored, even if words be clear.'"), citing *Riley v. County of Broome*, 95 N.Y.2d 455, 463, 719 N.Y.S.2d 623 (2000); McKinney's Cons. Laws of N.Y., Book 1, Statutes § 124, at 252 ("In ascertaining the purpose and applicability of a statute, it is proper to consider the legislative history of the act, the circumstances surrounding the statute's passage, and the history of the times").

In the face of the clear legislative history limiting the reach of GBL §380-b(b) to New York consumers, Plaintiffs' argument about the broad reach of the words used in the statute does not survive scrutiny. Indeed, the case on which they rely – *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013) – holds that a deceptive trade practices claim under GBL §349 requires a New York connection, even though that statute uses equally broad language to describe a permissible plaintiff ("any person"). The fact that the Courts interpreting GBL §349 have found there to be a required New York connection demonstrates that Plaintiffs' argument proves too much. Under GBL §380-b(b), as explained by its legislative history, the only consumers that are protected by the statute are New York consumers. Because none of the Plaintiffs is a New York consumer, they fail to state a claim.[5]

---

[5] Even if the Court were to apply the Second Circuit's holding in *Cruz* to a claim under GBL §380-b(b), Plaintiffs' claims would not survive. The basis for Plaintiffs' claims under GBL §380-b(b) is that they did not

### IV. PLAINTIFFS CANNOT MAINTAIN A CAUSE OF ACTION UNDER GBL §349

Plaintiffs' FAC alleges that Plaintiffs sustained injuries when Defendants commenced "fraudulent" litigation against them in New York, and contend that such activity is consumer oriented. These are virtually the exact same allegations that were found to be insufficient in *Angermier v. Northern Leasing Systems, Inc.*, 14 F.Supp.3d 134, 156-158 (S.D.N.Y. 2014) and *Aldrich v. Northern Leasing Systems, Inc.*, 2009 WL 889959 (Sup. Ct. N.Y. Co. Mar. 12, 2009). In *Angermeir*, the Court held:

> **Plaintiffs have failed to plead conduct related to consumer transactions, and they have failed to plead conduct that impacts consumers at large**. In pleading this claim, the Complaint itself characterizes Defendants' conduct as a "fraud on the court." (Compl. ¶ 199.) And although it does plead, in conclusory fashion, that Plaintiffs are "'consumers' for purposes of consumer protection statutes," it does not plead injuries arising out of a consumer-oriented transaction. (Id. ¶ 198.) In fact, the Complaint appears to plead the opposite of what § 349 requires when it alleges that "[n]one of the Plaintiffs had any commercial or other relationship with Defendants." (*Id.*) In any event, the Court finds that Plaintiffs' allegations concerning "false statements" and "fraud on the court[s]" fail to plead a consumer-oriented conduct.

*Angermeir*, 14 F. Supp.3d at 157 (emphasis added).

Plaintiffs make no even attempt to distinguish *Angermier* or *Aldrich,* and their reliance on *Serin v. Northern Leasing Systems, Inc.*, 2009 WL 7823216 (S.D.N.Y. Dec. 18, 2009) is misplaced. Indeed, the *Angermeir* Court refused to follow either *Serin* or *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 263-64 (2d Cir. 1995), on which the *Serin* Court relied. Distinguishing those cases, the *Angermeir* Court found that "although Plaintiffs refer to '[l]itigants' in the abstract and 'integrity ... in civil proceedings' in general, (Compl. \*158 ¶ 199), these allegations are based entirely on Plaintiffs' individual claims." *Angermeir*, 14

---

receive the notice required by the statute. Each of the Plaintiffs is located outside New York. Thus, if Plaintiffs did not receive the notice required by the statute, that took place outside New York, and the injury, if any, occurred outside of New York. There is no connection to New York other than the location of the Defendants.

F.Supp.3d at 157-58. Here, as in *Angermeir*, the claims involve private disputes between a limited number of individuals that do not impact consumers at large.[6]

## V. THE FILING OF FRAUDULENT LAWSUITS IS NOT EXTORTION, AND IS NOT A RICO PREDICATE ACT

The law is well settled in the Second Circuit that the initiation of even meritless litigation does not constitute an act of extortion in violation of the Hobbs Act, and therefore, cannot constitute a RICO predicate act. *See* Defs' Mem, Point III, at pp. 15-16 and the cases cited therein.[7] Plaintiffs' sole response to the convincing line of cases cited by Defendants is a desperate attempt to draw a distinction between meritless, as opposed to allegedly fraudulent, lawsuits. (Pl's Mem. at p. 16). The distinction that Plaintiffs suggest is not supported by the case law, which includes cases that involve allegations of fraudulent, and not just meritless, lawsuits. *See e.g. Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F.Supp.2d 153, 173-74, aff'd 443 Fed.Appx. 582 (2d Cir. 2011) (dismissing RICO claim based on prosecuting "knowingly false legal malpractice claims [against the Curtis Law Firm] with suborned perjury and deceit of courts").

None of the cases cited by Plaintiffs holds that the filing of frivolous or fraudulent lawsuits, without more, can constitute extortion under the Hobbs Act.[8] Indeed, the vast majority

---

[6] Plaintiffs' suggest that their GBL §349 claims are not pre-empted by 15 U.S.C. §1681s-2 because those claims are not limited to allegations of inaccurate reporting. That misses the point. The GBL §349 claims are preempted to the extent that they are based on inaccurate reporting. Therefore, allegations of inaccurate reporting may not be asserted as a basis for their inaccurate reporting claims.

[7] Plaintiffs' main response to Defendants' argument that filing meritless lawsuits cannot constitute extortion is to address an entirely different argument that Defendants have not made: that allegations of mail and wire fraud can constitute RICO predicates. As Defendants never argued otherwise, we also do not address that argument on reply.

[8] *See Viacom Int'l Inc. v. Icahn*, 747 F. Supp. 205 (S.D.N.Y. 1990), *aff'd* 946 F.2d 998 (2d Cir. 1991) (dismissing RICO claim alleging that public company was victim of extortion as a result of takeover threat); *Turkish v. Kasentz*, 27 F.3d 23 (2d Cir. 1994) (extortion claim arising from defendants' threat to withhold distribution of assets plaintiffs were entitled to if plaintiffs failed to execute general releases in favor of defendants); *U.S. v. Eisen*, 974 F.2d 246 (2d Cir. 1992) (mail fraud was a sufficient RICO predicate act in action based on suborning of perjury by witnesses); *Lemelson v. Wang Laboratories, Inc.*, 874 F. Supp. 430, 434 (D. Mass. 1994) ("the predicate acts are the enterprise's repeated and continuing use of the United States mails and the interstate use of the telephone

of courts that have addressed the issue have not permitted the type of claims asserted in this case. *See Snyder v. U.S. Equities Corp.*, No. 12-CV-6092 CJS, 2014 WL 317189, at *9 (W.D.N.Y. Jan. 28, 2014) and cases cited therein. Finally, Plaintiffs' attempt to distinguish *Nakahara v. Bal*, 1998 WL 35123 at *6-*11 (S.D.N.Y. 1998) proves Defendants' point. In *Nakahara*, the court granted defendants' motion to dismiss plaintiffs' RICO claim, holding that because the case was "premised on nothing more than a party's filing of unjustified lawsuits," the allegations could not serve as the predicate acts for a RICO claim. *Id.*

## VI. THE FAC FAILS TO ADEQUATELY ALLEGE THAT EACH DEFENDANT DIRECTED OR CONTROLLED THE AFFAIRS OF THE ENTERPRISE

RICO makes it unlawful to "participate, directly or indirectly, in the conduct of [an] enterprise's affairs." 18 U.S.C. §1962(c). In order to satisfy this requirement, a complaint must allege that each defendant had some part in directing those affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179, 113 S. Ct. 1163, 1170 (1993). Moreover, because a complaint alleging RICO must satisfy the heightened pleading standards of Rule 9(b), the complaint must make those allegations with specificity as to each defendant. The FAC does not meet this standard. *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 308 (S.D.N.Y. 2010) (dismissing complaint that did not allege that it was at defendant's behest that other members of the association in fact engaged in fraudulent conduct). *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004) ("There is a "substantial difference between actual control over an

---

wires"); *Eazypower Corp. v. ICC Innovative Concepts Corp.*, 98-CV-3189, 2002 WL 31473813 (N.D. Ill. Nov. 1, 2002) (RICO claim based on the filing of lawsuits as part of a scheme to extort money "may well be futile"; denying motion to amend pleading); *Kraft General Foods, Inc. v. Cattell*, 18 F. Supp.2d 280 (S.D.N.Y. 1998) (fear of future economic harm arising from threats that he would loss his job if he did not provide kickbacks); *People v. Capparelli*, 158 Misc. 2d 996 (Sup. Ct. N.Y. Co. 1993) (fear of future economic harm arising from defendants' demand for payments in exchange for a guarantee that he would control the labor union and make sure there was no violent unrest); *People v. Dioguardi*, 8 N.Y.2d 260, 268-69 (1960) (fear of economic harm arising from defendants' statements that protest would continue until defendants' payment demands were met); *U.S. v. Brecht*, 540 F.2d 45, 52 (2d Cir. 1976), *overruled U.S v. Seregos*, 655 F.2d 33 (2d Cir. 1981) (fear of economic harm arising from threat that victim that he would be denied any chance to obtain a contract unless he paid.)

enterprise and association with an enterprise in ways that do not involve control; only the former is sufficient under *Reves* because the test is not involvement but control.") (internal quotation omitted).

Without identifying any specific allegations from the FAC, Pls' Mem. asserts in conclusory fashion that "Defendants Cohen and Krieger were the masterminds" and that "Defendants Krieger, Centeno and Cucinotta, apart from being principals and control persons, made willfully false assertions in the New York City Civil Court." Pls' Mem., p. 4. These conclusory allegations are insufficient to plausibly allege that each of these defendants controlled the alleged fraudulent scheme.[9] This Court's holding in *In re Platinum and Palladium Commodities Litigation*, 828 F.Supp.2d 588, 602 (S.D.N.Y. 2011) is on point:

> "The Complaint never specifically alleges the nature of each defendant's participation in the allegedly fraudulent scheme. It merely sets forth a number of so-called "Racketeering Acts" committed by [those] Defendants, ... and adds a catalog of communications by mail or interstate wires alleged to have been made or caused to be made by the[m]...."). Accordingly, Plaintiffs' RICO claim is dismissed for failure to adequately plead predicate acts.

*quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young, No.,* 91 Civ. 2923 (CSH), 1994 WL 88129, at *20 (S.D.N.Y. Mar. 15, 1994). Because the FAC does not adequately allege that each Defendant directed or controlled the affairs of the RICO enterprise, Plaintiffs have failed to satisfy the requirements of 18 U.S.C. §1962(c) and their RICO claims should be dismissed.

---

[9] Plaintiffs' attempt to avoid the requirements of Rule 8(a) and Rule 9(b) by relying on the "group pleading" doctrine is misplaced. (Pls' Mem., pp. 6-7). The "group pleading" doctrine "allows plaintiffs to rely on a presumption that statements in prospectuses, registration statements, annual reports, press releases, or other group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company." *Elliott Associates, L.P. v. Hayes*, 141 F. Supp. 2d 344, 354 (S.D.N.Y. 2000) *aff'd*, 26 F. App'x 83 (2d Cir. 2002), (quoting *In re Oxford Health Plans, Inc.,* 187 F.R.D. 133, 142 (S.D.N.Y.1999)). The doctrine has absolutely no applicability to this case, which does not involve "group-published information."

## CONCLUSION

For the foregoing reasons, and for those set forth in Defs' Mem., Defendants motion to dismiss the FAC should be granted in its entirety.

Dated: New York, New York
      May 6, 2015

                                MOSES & SINGER LLP
                                *Attorneys for Defendants*

                                _____/s/_____
                                By: Robert D. Lillienstein
                                The Chrysler Building
                                405 Lexington Ave.
                                New York, New York 10174
                                (212) 554-7807