UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/1/2015
```

ELAINE AGHAEEPOUR, ASHLEY GLASGOW,
JULIE HIGGINS, SHANE MOORE, MICHELE
NORRIS, JESUS RIVERA, SCHILCO, INC. and
RAY SHILBER,

                              Plaintiffs,

         -against-

NORTHERN LEASING SYSTEMS, INC., MBF
LEASING, LLC, LEASE FINANCE GROUP, LLC,
LOUIS CUCINOTTA, JENNIFER CENTENO a/k/a
JENNIFER NUGENT, JAY COHEN, SARA
KRIEGER, JOSEPH I. SUSSMAN, and JOSEPH I.
SUSSMAN, P.C.,

                              Defendants.

14 cv 5449 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Elaine Aghaeepour ("Aghaeepour"); Ashley Glasgow ("Glasgow"); Julie Higgins

("Higgins"); Shane Moore ("Moore"); Michele Norris ("Norris"); Jesus Rivera ("Rivera");

Schilco, Inc. ("Schilco"); and Ray Schilber ("Schilber") (collectively, "Plaintiffs") filed the

instant Complaint against Jay Cohen ("Cohen"); Sara Krieger ("Krieger"); Jennifer Centeno

("Centeno"); Louis Cucinotta ("Cucinotta") (collectively, "Individual Defendants"); Joseph I.

Sussman ("Sussman"); Joseph I. Sussman, P.C. ("Sussman, P.C.") (collectively, "Sussman

Defendants"); Lease Finance Group, LLC ("LFG"); MBF Leasing, LLC ("MBF"); and Northern

Leasing Systems, Inc. ("NLS") (collectively, "Corporate Defendants") (with Individual

Defendants and Sussman Defendants, collectively, "Defendants"), alleging claims under the

federal Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964; the

federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681b(f), 1681s-2(b)(A); New York's

Anti–Deceptive Trade Practices Act ("NYFCRA"), N.Y. Gen. Bus. Law §§ 349, 380; and

common law fraud (*See* First Am. Compl. ("Compl."), ECF No. 6.) Before the Court is Defendants' Motion To Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6). (*See* Motion to Dismiss, ECF No. 13.) For the following reasons, Defendants' Motion is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from Plaintiffs' Complaint and are taken as true for the purposes of resolving the instant Motion. This action stems from Defendants' racketeering scheme to "intimidate out-of-state individuals into paying unwarranted sums of money by commencing (or threatening) fraudulent lawsuits in New York City Civil Court" based on forged documents. (Compl. ¶ 1.) In furtherance of this scheme, Defendants also made inaccurate entries on and improperly accessed Plaintiffs' credit reports. (*Id.* ¶ 2.)

Defendant NLS is in the business of financing equipment leases and manages and operates the other Corporate Defendants, LFG and MBF. (*Id.* ¶ 14.) LFG and MBF are subsidiaries of NLS. (*Id.* ¶¶ 15-16.) Individual Defendants are all principals and officers of the Corporate Defendants: Cohen is the President and Chief Executive Officer of Defendant NLS; Krieger is Vice President for Operations of NLS; Cucinotta is the Legal Collections Manager; and Centeno is the Legal Administrative Manager. (*Id.* ¶¶ 17-20.) Defendant Joseph Sussman is an attorney duly admitted to the Bar in New York. (*Id.* ¶ 21.) Sussman, through his law firm, Joseph I. Sussman, P.C., commenced and conducted litigation on behalf of the Corporate Defendants. (*Id.* ¶¶ 21-22.)

With regards to each Plaintiff, Defendants engaged in largely the same racketeering scheme, consisting of "systematic and repeated" intimidation in attempts to collect money from Plaintiffs to which Defendants were not entitled. (*Id.* ¶ 26.) More specifically, Defendants

"bull[ied]" Plaintiffs with threats of litigation over documents that Defendants "knew were forged." (*Id.*) In each case, Defendants would create an allegedly fraudulent financing lease, with Plaintiffs as signed guarantors. (*Id.* ¶¶ 26, 68, 76, 91, 95, 108, 118.) Where Defendants had access to Plaintiffs' bank accounts, Defendants would wrongfully debit amounts under the forged leases. (*Id.* ¶¶ 35, 77-78, 92, 109, 119.) Where Defendants did not have such access or when a plaintiff closed the bank account, Defendants harassed Plaintiffs—through phone calls and mailings—over "amounts due" and threatened Plaintiffs with litigation to collect for the debt in default. (*Id.* ¶¶ 37, 122.) In most cases, Defendants commenced lawsuits in the New York City courts. (*Id.* ¶¶ 45, 65, 79, 98, 110.) Since Plaintiffs are all out-of-state individuals, the lawsuits were designed to "ensure that Plaintiffs had no real opportunity to raise defenses to the [racketeering enterprise's] bogus lawsuits, so that the entry of a default judgment was all but certain." (*Id.* ¶ 27.) When Defendants were granted default judgments, many Plaintiffs were forced to hire attorneys in New York to attempt to set the judgments aside. (*Id.* ¶¶ 51, 71, 85, 104, 115.)

In the course of this scheme, Defendants also wrongfully accessed Plaintiffs' credit reports (*Id.* ¶¶ 39, 60, 87, 93, 105-06, 116, 120) and, in some cases, made adverse entries in the credit reports. (*Id.* ¶¶ 40, 61, 88, 117, 121.) Plaintiffs allege that these actions had "significant impact on credit availability to Plaintiffs, including without limitation, denial of credit opportunities, increase in interest rates, and diverse other consequences." (*Id.* ¶ 30.)

As a result of the foregoing, Plaintiffs suffered significant economic and non-economic damages, including mental anguish, embarrassment, annoyance, and emotional distress. (*Id.* ¶¶ 58, 74, 90, 94, 107, 124.)

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court must "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[ ]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662) (internal quotation marks omitted). A plaintiff must provide "more than labels and conclusions" to show he is entitled to relief. *Twombly*, 550 U.S. at 555.

**DISCUSSION**

As an initial matter, the Court notes that the Southern District of New York has heard at least three cases involving the same racketeering scheme alleged in the instant complaint against the same defendants. *See Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229 (S.D.N.Y. 2014); *Angermeir v. Cohen*, 14 F. Supp. 3d 134 (S.D.N.Y. 2014); *Serin v. N. Leasing Sys., Inc.*, No.

7:06-CV-1625, 2009 WL 7823216 (S.D.N.Y. Dec. 18, 2009).[1] In their motion to dismiss, Defendants make a number of arguments that have already been addressed by the federal court for the Southern District of New York. In light of the fact that these cases are solely persuasive authority, the Court will nonetheless undertake its own analysis of the law with regards to the repeated arguments.

   A.  *Pleading Standards under Fed. R. Civ. P. 8(a) and 9(b)*

   Defendants first argue that the Complaint should be dismissed because it fails to adequately plead the actions of multiple defendants with particularity and therefore fails under Federal Rules of Civil Procedure 8(a) and 9(b). Though Defendants do not make the distinction in their motion, Rule 9(b) only applies to the claims of mail fraud and wire fraud as predicate acts for the RICO claims. *See Angermeir,* 14 F. Supp. 3d at 145 (citing *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 178 (2d Cir. 2004); *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 185 (2d Cir. 2008)) ("In the context of a civil RICO claim, all allegations of fraudulent predicate acts[ ] are subject to the heightened pleading requirement of [Rule 9(b)].") (internal quotation marks omitted). *See also McLaughlin v. Anderson,* 962 F.2d 187, 194 (2d Cir. 1992) (holding that "the more lenient pleading standards" of Rule 8(a) apply to claims of extortion alleged as RICO predicate acts); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n. 4 (2d Cir. 1990) ("On its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy. [A] pleading of a conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal pleading requirements of Rule 8(a)."). Thus, only the allegations of mail and wire fraud are subject to the heightened pleading requirements of Rule 9(b), and the remaining claims must only meet the more liberal requirements of Rule 8(a).

---

[1] At least one New York State court has also heard a similar case: *Aldrich v. Northern Leasing Systems, Inc*., 2009 WL 889959 (Sup. Ct. N.Y. Co. Mar. 12, 2009).

1. *Rule 8(a)*

Defendants contend that by "lumping defendants together," Plaintiffs fail to provide a factual basis to distinguish between the acts of each defendant. (Defendants' Memorandum of Law in Support of Motion to Dismiss the First Amended Complaint ("Def.'s Memo"), 7.) In support of this argument, Defendants cite a number of cases that were similarly cited in *Angermeir*: *Marcilis v. Twp. of Redford*, 693 F.3d 589 (6th Cir. 2012); *Atuahene v. City of Hartford*, 10 Fed.Appx. 33, 34 (2d Cir. 2001); *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.,* No. 12–CV–2837, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) aff'd, 530 F. App'x 19 (2d Cir. 2013); *Elias v. City of New York*, No. 10–CV–5495, 2010 WL 5475809 (E.D.N.Y. Dec. 30, 2010); *Southerland v. N.Y.C. Housing Auth.*, No. 10–CV–5243, 2010 WL 4916935 (E.D.N.Y. Nov. 23, 2010). (*See* Def.'s Memo, 8.) The *Angermeir* court previously distinguished each of these cases:

> In most of the cases Defendants cite, the court dismissed the complaint because it failed to distinguish at all between any of the Defendants in claims alleging discrimination or constitutional-rights violations. *See, e.g., Marcilis*, 693 F.3d at 596 (dismissing a complaint raising a Bivens claim where the complaint "ma[de] *only* categorical references to 'Defendants'" (emphasis added)); *Atuahene*, 10 Fed.Appx. at 34 (noting that the complaint "alleging a host of constitutional and state common law claims" initially "failed to differentiate among the defendants, alleging instead violations by 'the defendants,' " and then later "still fail[ed] to identify which defendants were alleged to be responsible for which alleged violations" when the plaintiff "replaced the allegations against 'the defendants' with the names of all of the defendants"); *Elias*, 2010 WL 5475809, at *3 (dismissing complaint that "attribute[d] discrimination, retaliation, and disparate treatment generally to 'Defendants,' without distinguishing their individualized conduct" (internal citation omitted)); *Southerland*, 2010 WL 4916935, at *3 (dismissing complaint alleging constitutional-rights violations where the complaint failed "[to] allege facts against *any* individual defendant" (emphasis added)). In one case, the court dismissed a copyright-infringement claim where the plaintiff sued four entirely separate entities—a design firm, an architect, a hotel, and a

> procurement agent—and the complaint "fail[ed] to isolate the key allegations against each defendant." *See Ochre*, 2012 WL 6082387, at *6.

*Angermeir*, 14 F. Supp. 3d at 143. This Court agrees with the analysis in *Angermeir*. As it did in that case, the Complaint in the instant case contains numerous allegations pleaded with specificity as to particular defendants. First, the Complaint alleges the role each Individual Defendant played in the scheme. (*See* Compl. ¶ 131 (alleging that Cohen is the President of NLS and, as such, was in charge of all its day-to-day operations, including organization and supervision of the racketeering scheme); *id.* ¶¶ 111-112, 132 (alleging that Krieger is the Vice President for Operations of the Defendant NLS, that she was responsible for day-to-day operations and lease originations, and that she verified numerous fraudulent complaints); *id.* ¶¶ 20, 66-67, 80-81, 99-100, 134 (alleging that Centeno is the Legal Administrative Manager for the Defendants and was one of the persons who verified many fraudulent complaints filed by the Sussman Defendants); *id.* ¶¶ 53-55 (alleging that Cucinotta was a Legal Collections Manager and, in that capacity, he signed and verified complaints filed by Sussman Defendants).) Second, the Complaint explains the role played by the Sussman Defendants in commencing and filing allegedly bogus lawsuits despite orders from the New York Civil Court denying jurisdiction. (*Id.* ¶¶ 45, 79, 98, 110, 139, 144.) *See Northern Leasing Sys., Inc. v. Walton*, CV049136/02NY, 2012 WL 2466977 (N.Y. Civ. Ct. June 25, 2012); *Northern Leasing Systems, Inc. v. Soumastre,* Civ Ct, N.Y. Cty, January 26, 2005, Cooper, J., Index No. 13566/03. Finally, to the extent of its knowledge, Plaintiffs have pleaded the actions with sufficient particularity to support a plausible inference as to which Corporate Defendant—MBF, NLS, or LFG—injured each Plaintiff. (*See* Compl. ¶¶ 32, 76-80, 95-97 (factual allegations involving Defendant MBF and Plaintiffs Aghaeepour, Higgins, and Norris); *id.* ¶¶ 33-35, 41-43, 60-63, 108-109, 118-121 (factual

allegations involving Defendant NLS and Plaintiffs Aghaeepour, Glasgow, Rivera, and Schilber/Schilco); *id.* ¶ 161 (factual allegations involving Defendant LFG and Plaintiff Moore).)

Thus, Plaintiffs' Complaint does not "lump defendants together" impermissibly, but instead alleges conduct as to each defendant sufficient to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). *See also Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003) ("the purpose of [Rule 8(a)] is to provide fair notice of the claims and to enable the adverse party to answer the complaint and prepare for trial."); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (Rule 8(a) is violated if a complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."); *Hudak v. Berkley Grp., Inc.*, No. 13–CV–89, 2014 WL 354676, at *4 (D.Conn. Jan. 23, 2014) ("Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant."). The Court therefore denies Defendants' Motion to Dismiss under Rule 8(a).

    *2.  Rule 9(b)*

Defendants next argue that Plaintiffs fail to allege mail and wire fraud with the particularity required by Federal Rule of Civil Procedure 9(b). First, Defendants assert that the Complaint does not allege with proper specificity the "content of the items mailed, [] how each of the items was false and misleading, [and] who made the misrepresentations." (*See* Def.'s Memo, 9.) Next, Defendants claim that the Complaint does not sufficiently allege each Defendant directed or controlled the affairs of the RICO enterprise.[2] (*See* Defendants' Reply

---

[2] The Court notes that this argument was raised by Defendants only in their Reply. To the extent Plaintiffs were not given an opportunity to respond, this argument is invalid. The Court will nonetheless consider the substance of the argument to preclude further discussion of the issue.

Memorandum in Further Support of Defendants' Motion to Dismiss the First Amended Complaint ("Def.'s Reply"), 9.) On both counts, Defendants are incorrect.

In pleading a claim of mail or wire fraud, a complaint must allege "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007) (internal quotation marks omitted). "In general, '[p]laintiffs must plead ... mail [or wire] fraud with particularity, and establish that the [communications] were in furtherance of a fraudulent scheme.'" *Angermeir*, 14 F. Supp. 3d at 145 (citing *Lundy v. Catholic Health Sys. of Long Island Inc*., 711 F.3d 106, 119 (2d Cir. 2013)). Though Defendant correctly notes that allegations of mail fraud "should specify the fraud involved, identify the parties responsible for the fraud, and where and when the fraud occurred," that standard applies to *per se* mail fraud and does not apply to allegations where the mail and wires are used *in furtherance of* fraud. *Evercrete Corp. v. H-Cap Ltd*., 429 F. Supp. 2d 612, 624 (S.D.N.Y. 2006) (internal citations omitted). *See also* McLaughlin, 962 F.2d 187, 191 (2d Cir. 1992); *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986).

As *Angermeir* noted, courts in the Second Circuit have consistently applied a different pleading standard in cases where the fraudulent predicate acts are used in furtherance of a greater fraudulent scheme: "Southern District courts have previously articulated the different requirements in either a *per se* or 'in furtherance of fraud' context: In cases in which the plaintiff claims that the mails or wires were simply used in furtherance of a master plan to defraud, the communications need not have contained false or misleading information themselves. In such cases, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b)." *Am. Med. Ass'n v. United*

*Healthcare Corp.,* 588 F. Supp. 2d 432, 442-43 (S.D.N.Y. 2008) (citing *In re Sumitomo Copper Litig.,* 995 F.Supp. 451, 456 (S.D.N.Y.1998) (internal citation omitted)); *Aiu Ins. Co. v. Olmecs Medical Supply, Inc.,* 2005 WL 3710370, *11 (E.D.N.Y. February 22, 2005) (finding that for RICO claims alleging mailings in furtherance of fraud, plaintiff must "delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme" in order to satisfy Rule 9(b)) (internal citations omitted). Thus, "where the plaintiff claims that the mail or wires were simply used in furtherance of a scheme to defraud, the complaint 'need not be specific as to each allegation of mail or wire fraud' as long as 'the nature of the RICO scheme is sufficiently pleaded so as to give notice to the defendants.'" *Evercrete Corp.*, 429 F. Supp. 2d at 624 (citing *First Interregional Advisors Corp. v. Wolff*, 956 F.Supp. 480, 485 (S.D.N.Y. 1997) (internal citation omitted)). *See also Serin*, 2009 WL 7823216, at *7 (citing *In re Sumitomo Copper Litig.*, 995 F.Supp. at 456 (internal citations omitted)) ("In complex civil RICO actions involving multiple defendants, [] Rule 9(b) does not require that the temporal or geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity. In such cases, Rule 9(b) requires only that the plaintiff delineate with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.").

In the instant case, Plaintiffs do not allege that the mailings and wire transmissions themselves contain fraudulent misrepresentations. Instead, Plaintiffs argue that the communications are part of an ongoing scheme to defraud Plaintiffs. On this point, the Court is in agreement with *Serin*:

> The Plaintiffs describe with the required amount of particularity the details of the racketeering scheme: they describe in detail how the Defendants allegedly forged leases in each Plaintiff's name; how the Defendants made electronic deductions from the bank accounts of

10

> Plaintiffs []; how the Defendants then called and/or mailed letters to
> each Plaintiff demanding payment on the leases and threatening
> litigation if the Plaintiffs refused to pay; how the Defendants
> initiated litigation in New York City Civil Court against Plaintiffs
> []; how the[] Plaintiffs personally appeared and defended these
> allegedly meritless lawsuits; and how the Defendants allegedly
> made adverse entries in all of the Plaintiffs' personal credit reports.
> The general allegations of mail fraud in [] the Amended Complaint,
> when read in the context of the specific allegations the Plaintiffs
> make earlier in the Amended Complaint, are sufficient to adequately
> plead mail fraud.

*Serin,* 2009 WL 7823216 at *8. In the same fashion, Plaintiffs have provided detailed

information regarding the instant fraudulent scheme. In addition to the allegations outlined

above, Plaintiffs also explained how Defendants created fraudulent leases (Compl. ¶¶ 32-33, 62,

77, 91-92, 95-96, 108, 118); Defendants wrongfully debited amounts from Plaintiffs' bank

accounts (*id.* ¶¶ 35, 78, 109, 119); Defendants contacted Plaintiffs demanding payment and

threatening litigation if Plaintiffs refused to pay (*id.* ¶¶ 37, 122); Defendants initiated litigation in

New York City Civil Court (*id.* ¶¶ 45, 65, 79, 98, 110); and Defendants fraudulently requested

Plaintiffs' credit reports and made adverse entries in such reports (*id.* ¶¶ 38-40, 60-61, 93, 120-

121). Plaintiffs then explicitly allege mail and wire fraud to the best of their knowledge in

paragraphs 144 and 150 of the Complaint. Though the allegations in these paragraphs are

general, when viewed in light of the specifics of the fraudulent scheme, they are sufficient under

Rule 9(b). *See Spira v. Nick*, 876 F.Supp. 553, 559 (S.D.N.Y. 1995) ("Once the plaintiff alleges

with particularity the circumstances constituting the fraudulent scheme, neither the reputational

interests nor the notice function served by Rule 9(b) would be advanced in any material way by

insisting that a complaint contain a list of letters or telephone calls."); *Curtis & Assocs., P.C. v.

Law Offices of David M. Bushman, Esq.*, 758 F.Supp.2d 153, 177 (E.D.N.Y. 2010) ("[I]n cases

where plaintiffs allege that the mails or wires were simply used in furtherance of a master plan to

defraud, .... particularity as to the mailings themselves is unnecessary ...." (internal quotation marks and citations omitted)).

Moreover, despite Defendants' argument that the "allegations are insufficient to plausibly allege that each of these defendants controlled the alleged fraudulent scheme," Plaintiffs have sufficiently described each defendant's participation. (Def.'s Reply, 9.) Defendant misapplies the control requirement. As outlined in the very case Defendant cites, "[o]f course, the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required." *Reves v. Ernst & Young*, 507 U.S. 170, 179, 113 S. Ct. 1163, 1170, 122 L. Ed. 2d 525 (1993). A defendant, therefore, does not need to have complete control over the affairs of the Enterprise—he or she must only play some part in directing the scheme.

The Complaint plainly meets this standard as to each defendant. As outlined above, Plaintiffs provide the job titles of each Individual Defendant, as well as how their individual responsibilities demonstrate their participation in the scheme. For example, the Complaint describes how defendant Krieger, the Vice President of Operations for Defendant NLS, is responsible for day-to-day operations and lease originations. (Compl. ¶¶ 111-112, 132.) Given that the fraudulent scheme stems from the origination of leases, defendant Krieger's direction in the scheme is clear. In addition, the Complaint states both the Corporate Defendants and the Sussman Defendants involvement in the scheme (i.e., the forging of leases and collections practices, and the filing of fraudulent lawsuits, respectively). The allegations, when viewed in the light most favorable to Plaintiffs, are sufficient to support an inference that each defendant played some part in directing the scheme.

For the foregoing reasons, the Court finds that the allegations are sufficient to put Defendants on notice of their allegedly wrongful conduct. "Furthermore, while Defendants are correct that the Complaint contains a number of allegations against all Defendants in general, the Complaint's other allegations specific to each Defendant are sufficient to give Defendants fair notice of the claims against them and to accomplish the other goals of Rule 9(b)". *Angermeir,* 14 F. Supp. 3d at 145 (citing *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.,* 667 F.Supp.2d 308, 332 n. 9 (S.D.N.Y.2009) ("Although the [complaint] repeatedly charge[d] the [fraudulent acts] to 'Defendants,' and [did] not charge the [acts] to one in particular, this was simply due to [p]laintiff's understanding that [the defendants] should be treated as the same entity. At this stage of the proceedings, then, [p]laintiff fairly charge[d] both [d]efendants with the [acts]. Accordingly, there can be no doubt that the [c]omplaint [gave] each defendant notice of precisely what he [was] charged with. No more is required by Rule 9(b)." (internal citations and some internal quotation marks omitted)); *Green v. Beer*, No. 06–CV–4156, 2009 WL 911015, at *6 n. 13 (S.D.N.Y. Mar. 31, 2009) ("[E]lsewhere in the ... complaint, Plaintiffs specify the who, what, when, and where of their fraud claim with sufficient particularity to cure any confusion these scattered clumped allegations may cause."); *Allstate Ins. Co. v. Ahmed Halima*, No. 06–CV–1316, 2009 WL 750199, at *5 (E.D.N.Y. Mar. 19, 2009) (finding that, because "requiring [p]laintiffs to plead with more particularity would not further any of the policy goals of Rule 9(b)," the plaintiffs "properly pled a civil RICO claim under § 1964(c)")). The Court therefore denies Defendants' Motion to Dismiss under Rule 9(b).

13

## B.  *Res Judicata*

Defendants next move to dismiss the RICO claims of plaintiffs Glasgow, Moore, and Norris[3] because, under the doctrine of *res judicata*, each plaintiff is barred from raising claims with regards to the fraudulent leases that were the subjects of default judgments in New York. Under the doctrine of *res judicata*, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotations omitted). "Res judicata will bar subsequent litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Overview Books, LLC v. United States*, 438 F. App'x 31, 33 (2d Cir. 2011) (internal citations and quotation marks omitted). Res judicata, or claim preclusion, is invoked when a party seeks to relitigate a claim, or cause of action, arising out of the same transaction or a series of transactions which were raised or could have been raised in a prior litigation. *See In re Hunter*, 4 N.Y.3d 260, 269, 827 N.E.2d 269, 274 (2005); *Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp.,* 250 N.Y. 304, 306, 165 N.E. 456, 457 (1929).

In general, a default judgment is considered a final judgment on the merits sufficient to invoke *res judicata. See Omphil Care, Inc. v. Hertz Co.*, 48 Misc. 3d 131(A) (N.Y. App. Term. 2015) (citing *Ava Acupuncture, P.C. v. NY Cent. Mut. Fire Ins. Co.*, 34 Misc. 3d 149(A), 950 N.Y.S.2d 490 (App. Term 2012)); *Lazides v. P & G Enterprises*, 58 A.D.3d 607, 871 N.Y.S.2d 357 (2009) ("It is well settled that default judgments can have res judicata effect."); *Eagle Insurance Co. v. Facey,* 272 A.D.2d 399, 400 (2d Dep't 2000) ("The doctrine [of res judicata] is

---

[3] For the purpose of Subsection B – Res Judicata, "Plaintiffs" refers to plaintiffs Glasgow, Moore, and Norris.

applicable to an order or judgment taken by default which has not been vacated."); *U.S. Sec. & Futures Corp. v. Irvine,* No. 00 Civ. 2322(RMB)(THK), 2002 WL 34191506, at *4 (S.D.N.Y. May 13, 2002) ("A default judgment has the same preclusive effect for res judicata purposes as a judgment on the merits.") (citing *N. Am. Foreign Trading Corp. v. Chiao Tung Bank,* No. 95 Civ. 5189(LBS), 1997 WL 193197, at *5 (S.D.N.Y. Apr. 18, 1997)); *EDP Med. Computer Sys., Inc.,* 480 F.3d at 626 (citations omitted) ("[r]es judicata does not require the precluded claim to actually have been litigated; its concern, rather, is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the claim. That is why it has long been the law that default judgments can support res judicata as surely as judgments on the merits."); 1B Moore's Federal Practice, P 0.409(4) at 1025 (2d ed. 1980) (citation omitted) ("where the court has the requisite jurisdiction, a default judgment is just as conclusive an adjudication between the parties of whatever is essential to support a judgment as when rendered after answer and complete contest in the open courtroom."). The crux of *res judicata* is that the "party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 456, 482 N.E.2d 63 (1985).

In the instant case, Plaintiffs Glasgow, Norris, and Moore were sued in New York Civil Court by the Corporate Defendants[4] for amounts due under the leases that are in question here. (*See* ECF No. 15, Exhibits A-C.) In each case before the Civil Court, Plaintiff failed to appear, and a default judgment was entered enforcing the lease guaranty. (*Id.*) Following the default judgments, each Plaintiff filed a motion to vacate, alleging that the lease was the product of fraud and forgery, and the Court—in each case—denied Plaintiffs' motions (*See* ECF No. 15, Exhibits D-F.) Plaintiff Glasgow subsequently filed a motion to renew/reargue, which was also denied.

---

[4] Each Corporate Defendant was the Plaintiff in a civil suit against Plaintiffs Glasgow, Norris, and Moore. (*See* ECF No. 15, Exhibits A-C.)

(*See* ECF No. 15, Exhibit F.) Plaintiff Moore appealed the denial of his motion to vacate to the First Department, and the Appellate Term affirmed the order. (*See* ECF No. 15, Exhibit G.) Given that all three Plaintiffs had an opportunity to raise—and did in fact raise—the issue of fraudulent leases, *res judicata* acts as a bar to litigating the instant claims. The New York judgments are additionally conclusive upon issues that were essentially decided on the motions to vacate (i.e., the validity of the guarantees). *See Saud v. Bank of New York,* 929 F.2d 916, 919 (2d Cir. 1991) (precluding RICO claims on *res judicata* grounds because "the essential facts alleged in support of Saud's RICO claims, i.e., allegedly fraudulent conduct by the Bank in connection with the Indeco loans, were not only present in the earlier Guaranty Action, but raised therein by Saud himself"). *See also Gaston v. Am. Transit Ins. Co.,* 40 A.D.3d 578, 579, 835 N.Y.S.2d 369, 370 (2007) *aff'd as modified*, 11 N.Y.3d 866, 901 N.E.2d 743 (2008); *Tax Lien Co. of New York v. Schultze*, 213 N.Y. 9, 106 N.E. 751 (1914). In other words, the New York judgments on the motions to vacate concluded that the leases that each Plaintiff signed as guarantors were enforceable and not the product of fraud and forgery. Therefore, any claim in this case that requires a different determination is barred under *res judicata*. Moreover, under New York's transactional approach to *res judicata,* "a later claim arising out of the same factual grouping as an earlier litigated claim [is barred,] even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citing *Clarkstown Recycling Ctr., Inc. v. Parker, Chapin Flattau & Klimpl, LLP*, 1 F. Supp. 2d 327, 329 (S.D.N.Y. 1998)) (citing *Smith v. Russell Sage College,* 54 N.Y.2d 185, 445 N.Y.S.2d 68, 429 N.E.2d 746 (1981); *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981); *Ventura v. M.A.F. Estates, Inc.,* 247 A.D.2d 378, 668 N.Y.S.2d 645, 646 (2d Dept. 1998)). Thus, to the extent the current claims arise out of

Defendants' attempts to collect on allegedly fraudulent leases, they are barred. *See Gianatasio v. D'Agostino,* 862 F. Supp. 2d 343, 349-50 (S.D.N.Y. 2012) ("Although the causes of action in the federal complaint are styled in a somewhat different form from those in the state court complaint, all the federal causes of action stem from the same [] claims asserted in the state court action.").

Finally, Plaintiffs Glasgow, Norris, and Moore assert that their claims are not barred by *res judicata* under an exception holding that a separate lawsuit may be brought where the alleged perjury or fraud in the underlying action was "merely a means to the accomplishment of a larger fraudulent scheme." *Newin Corp. v. Hartford Acc. & Indem. Co*., 37 N.Y.2d 211, 217, 371 N.Y.S.2d 884, 333 N.E.2d 163 (1975). To invoke the fraud exception, Plaintiffs must show that the instant alleged fraudulent scheme is "greater in scope than the issues determined in the prior proceeding" and that "the [instant] cause of action did not arise out of the factual transaction which was the subject matter of [the prior] action." *Specialized Indus. Servs. Corp. v. Carter*, 68 A.D.3d 750, 752, 890 N.Y.S.2d 90, 92 (2009) (internal citation omitted). Plaintiffs have failed to make this showing.

Plaintiffs claim the current scheme "is much greater in scope" than the issues determined in state court, but the Court is unpersuaded. Plaintiffs have not shown that the alleged fraudulent scheme is any greater—or even different—than the fraud alleged in their motions to vacate in state court. In their motions, Plaintiffs argued that the default judgments should be vacated because the leases are products of fraud and therefore Defendants cannot collect on them. The Court fails to see how the instant alleged scheme is any greater than exactly that. Plaintiffs themselves describe the scheme as one to "intimidate out-of-state individuals into paying unwarranted sums of money with fraudulent lawsuits in New York City Civil Court." (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the First Amended

Complaint ("Pl.'s Memo"), 1.) The fraud that Plaintiffs seek to recover from here is the same fraud that Plaintiffs alleged in their motions to vacate. *See Specialized Indus. Servs. Corp.,* 68 A.D.3d at 751-52, 890 N.Y.S.2d at 92 ("Generally, a party who has lost a case as a result of alleged fraud or false testimony cannot collaterally attack the judgment in a separate action for damages against the party who adduced the false evidence, and the plaintiff's remedy lies exclusively in moving to vacate the default judgment."). The goals of the two schemes are the same – to collect on allegedly fraudulent leases. The fact that Plaintiffs frame the scheme as one based on "fraudulent lawsuits" rather than "fraudulent leases" is futile; the lawsuit is only fraudulent if the underlying lease is fraudulent. *Newins Corp.,* 37 N.Y.2d at 218 ("[i]f the total objective of the scheme was the determined issue, then there is a bar."). The Court therefore fails to see how the current scheme is any broader in scope.

The Court additionally finds the Second Circuit case, *Saud v. Bank of New York,* particularly instructive here. *Saud,* 929 F.2d 916. In *Saud,* Plaintiff alleged that he was fraudulently induced to sign a personal guaranty for a real estate loan. The principal on the loan defaulted, and the bank obtained a default judgment against the plaintiff/guarantor (the "Guaranty Action"). *Id.* at 917. Plaintiff then brought a civil RICO action against the bank and the former assistant bank vice-president, alleging that their fraudulent activity resulted in his decision to guarantee the loan and his subsequent liability under that guaranty. *Id.* The Court explained that "it does not matter that a RICO claim was not expressly asserted in the Guaranty Action, for it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Id.* at 419 (internal citations omitted). Because the facts essential to the RICO claim were present at the time of the Guaranty Action, the Court dismissed the claim as barred by *res judicata*. *Id.* at 419-20. Plaintiff

additionally attempted to distinguish the fraud alleged in the Guaranty Action from the fraud alleged in the RICO claim. *Id.* at 920. The court, however, found this argument unavailing: "Saud's defenses to the Guaranty Action and his RICO claims asserted herein are both based on alleged fraudulent conduct occurring in connection with the [] loan[]. As noted above, an examination of Saud's affirmative defenses in the Guaranty Action belies Saud's claim that the two frauds are 'qualitatively different.' Both are based on broad allegations of fraud in connection with the same loan transaction." *Id.* Plaintiffs Glasgow, Norris, and Moore present the Court with the same issues here – both allegations of fraud connect with the same lease guarantees. Because no additional fraudulent conduct is alleged and the facts essential to the RICO claims were present at the time of the default judgments, their claims are barred.

For the reasons stated, the Court finds that Plaintiffs Glasgow, Norris, and Moore's claims are barred by *res judicata*,[5] and Defendants' Motion to Dismiss on this basis is granted.

### C. RICO Claims - Predicate Acts

Defendants argue that the Plaintiffs' RICO claims should be dismissed to the extent they are based on predicate acts of extortion because "meritless litigation does not amount to extortion under federal or state law." (Def.'s Memo, 16.) However, because the Court has determined that Plaintiffs sufficiently pleaded a "pattern of racketeering in which the alleged enterprise committed multiple predicate acts of mail and/or wire fraud in further[ance] of its allegedly fraudulent and extortionate scheme, it finds that it is not necessary to consider whether the filing

---

[5] Though Plaintiffs bring the current action against additional defendants (i.e., employees of Corporate Defendants), the application of *res judicata* does not require "literal privity" of parties. *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). "The doctrine of res judicata also bars litigation of the same causes of action against defendants who were known to plaintiff at the time the first action was filed but were not named where the newly-added defendants have a sufficiently close relationship to the original defendant. Where the 'new' defendants are sufficiently related to one or more of the defendants in the previous action which arises from the same transaction all defendants may invoke res judicata." *Official Publications, Inc. v. Kable News Co.*, 811 F. Supp. 143, 147 (S.D.N.Y. 1993) (internal citations omitted).

of lawsuits could itself be considered a predicate act of extortion for RICO purposes." *Serin*,

2009 WL 7823216, at *9. The allegations of mail and wire fraud are sufficient, at this stage, to

satisfy Plaintiffs' burden to plead predicate acts. *See Angermeir*, 14 F. Supp. 3d at 153-54

(finding that Plaintiffs' allegations of mail and wire fraud sufficient to uphold a RICO claim

even in the absence of acts of extortion). The Court therefore need not consider whether the

alleged acts of extortion are valid as a matter of law and denies this prong of Defendants' Motion

to Dismiss.

### D.  FCRA and NYFCRA Claims

#### 1.  Statute of Limitations

Defendants next assert that the claims of Plaintiffs Moore and Rivera under the FCRA

and NYFCRA are untimely. Actions alleging FCRA violations must be brought "not later than

the earlier of (1) 2 years after the date of discovery by the plaintiff of the violation that is the

basis for such liability; or (2) 5 years after the date on which the violation that is the basis for

such liability occurs." 15 U.S.C. § 1681p. Under the NYFCRA, actions must be brought "within

two years from the date on which the liability arises, except that where a defendant has

materially and willfully misrepresented any information required under this article to be

disclosed to an individual and the information so misrepresented is material to the establishment

of the defendant's liability to that individual under this article, the action may be brought at any

time within two years after the discovery by the individual of the misrepresentation." N.Y. Gen.

Bus. Law § 380-n.

Counts III-X of the Complaint assert claims under the FCRA and NYFCRA concerning

allegations that Defendants' wrongfully accessed Plaintiffs' credit reports and made adverse

entries in Plaintiffs' credit reports. (*See* Compl. ¶¶ 191-231.) Therefore, the dates of violations at

issue are the times at which Defendants allegedly accessed and made entries on Plaintiffs' credit reports. Defendants accessed Plaintiffs Rivera and Moore's credit reports in July 2006 and December 2008, respectively. (*Id.* ¶¶ 93, 116.) The Complaint does not allege any adverse entries with regards to Plaintiffs Rivera and Moore.

The Court notes that Plaintiffs do not oppose dismissal under the FCRA in their motion, presumably because the law is clear that such actions are untimely. The Complaint was filed in July 2014, clearly more than 5 years after the date of the alleged violations in 2006 and 2008. Under the NYFCRA, Plaintiffs claim that because "Defendants did not disclose material information to Mr. Moore and Mr. Rivera timely," the action is timely if brought within two years after the discovery of the misrepresentation. (Pl.'s Memo, 23.) Plaintiffs do not explain, however, what material information was undisclosed or what misrepresentation was made to excuse the delay. Moreover, Plaintiffs do not cite any case to support their assertion. The Court does not find in the record any misrepresentation that could have delayed Plaintiffs Rivera and Moore's discovery of the NYFCRA violations. Therefore, the NYFCRA violations must be brought within two years from the date on which the liability arises (2006 and 2008), and Plaintiffs Moore and Rivera's claims are untimely. The Court dismisses Plaintiffs Moore's and Rivera's claims under the FCRA and NYFCRA.

### 2. *Inaccurate Reporting*

Defendants move to dismiss Plaintiffs Higgins, Moore, Norris, Rivera, Schilber and Schilco, Inc.'s claims for failing to investigate and/or correct an inaccurate entry on a credit report because these Plaintiffs have not alleged that Defendants were notified of the error and failed to correct the entry after having knowledge of the error. (Def.'s Memo, 17.) Plaintiffs do not address this argument in their motion, and the Court therefore deems the claims abandoned:

21

"[P]laintiff's failure to respond to contentions raised in a motion to dismiss . . . constitutes an abandonment of those claims." *Youmans v. Schriro*, No. 12 Cv. 3690 (PAE)(JCF), 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013) (citing *M.M. ex rel. J.M. v. New York City Department of Education,* No. 09 Cv. 5236, 2010 WL 2985477, *6 (S.D.N.Y. July 27, 2010) (collecting cases); *Brandon v. City of New York,* 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (same)).

The Court would reach the same conclusion if it were to consider the substance of Defendants' argument. The FCRA imposes, at a minimum, a duty to investigate and rectify inaccurate information in a credit report. 15 U.S.C.A. § 1681s-2(b)(1). *See Frederick v. Capital One Bank* (USA), N.A., No. 14-CV-5460 AJN, 2015 WL 5521769, at *6 (S.D.N.Y. Sept. 17, 2015) (citing § 1681s–2(b)(1)(A), (C), (E)) ("At a minimum, § 1681s–2(b) requires furnishers to 'conduct an investigation with respect to the disputed information,' 'report the results of the investigation to the consumer reporting agency,' and modify or delete inaccurate information."). A cause of action under the FCRA for inaccurate reporting exists "only if the furnisher of information received notice of the consumer dispute from a credit agency." *Neblett v. Chase Bank*, No. 09 CIV 10574 DAB, 2010 WL 3766762, at *5 (S.D.N.Y. Sept. 27, 2010). *See also Kane v. Guar. Residential Lending, Inc.,* No. 04-CV-4847 (ERK), 2005 WL 1153623, at *5 (E.D.N.Y. May 16, 2005) ("[U]nless and until a furnisher of information receives notice from a credit reporting agency, no private right of action exists under section 1681s–2(b).") Therefore, to the extent Plaintiffs did not allege that the Defendants received notice of their disputes as to the guaranty default entries, the FCRA claims cannot survive. With regards to Plaintiffs Higgins, Moore, Norris, Rivera, Schilber and Schilco, Inc., any such allegation is missing from the Complaint.

Moreover, courts generally have interpreted the federal and New York statutes similarly. *See Ali v. Vikar Mgmt. Ltd.,* 994 F.Supp. 492 (S.D.N.Y.1998); *see also Scott v. Real Estate Fin. Group,* 956 F.Supp. 375, 384 (E.D.N.Y.1997), *aff'd,* 183 F.3d 97, 100 (2d Cir.1999). "Therefore, the Court's conclusions as to the FCRA also apply to the NYFCRA," and the pleadings are equally insufficient as to the NYFCRA claims of failure to investigate and rectify disputed entries. *Stonehart v. Rosenthal*, No. 01 CIV. 651 (SAS), 2001 WL 910771, at *7 (S.D.N.Y. Aug. 13, 2001). The Court finds that Plaintiffs Higgins, Moore, Norris, Rivera, Schilber and Schilco, Inc.'s claims for failing to investigate and/or correct an inaccurate entry on a credit report under the FCRA and NYFCRA are insufficient as a matter of law and are therefore dismissed without prejudice.

### 3. *Negligent Violations - Damages*

It is well settled that a complaint alleging a claim for negligent violation of the FCRA under § 1681o must allege actual damages. *Braun v. Client Servs. Inc.*, 14 F. Supp. 3d 391, 397 (S.D.N.Y. 2014); *Ritchie*, 14 F. Supp. at 240; *Perl v. Am. Exp.*, No. 11 CIV. 6899 KBF, 2012 WL 178333, at *4 (S.D.N.Y. Jan. 19, 2012) (dismissing the complaint because plaintiffs "insufficiently pled actual damage in support of their negligent noncompliance claim"); *Caltabiano v. BSB Bank & Trust Co.*, 387 F. Supp. 2d 135, 141 (E.D.N.Y. 2005) ("To maintain a claim under the FCRA, Plaintiff bears the burden of demonstrating "actual damages sustained" as a result of the Defendants' activities."). The Second Circuit has additionally held "that 'actual damages' may include humiliation and mental distress, even in the absence of out-of-pocket expenses." *Casella v. Equifax Credit Info. Servs.,* 56 F.3d 469, 474 (2d Cir. 1995). Though a plaintiff may recover emotional damages, this does not remove the requirement that plaintiff suffer an actual injury. *See Caltabiano*, 387 F. Supp. 2d at 142 (citing *Patrolmen's Benevolent*

*Ass'n of New York v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002) ("In order to support a claim for emotional distress damages, a plaintiff must demonstrate they suffered an 'actual injury.'"). In *Casella*, the Second Circuit explained that, at a minimum, the plaintiff must show that "any creditor or other person [] learned of the derogatory information from a credit reporting agency." *Casella*, 56 F.3d at 475. In so holding, the court rejected the plaintiff's "bare contention that he is entitled to damages for pain and suffering simply because he *knew* of an inaccurate and potentially damaging item in his credit report." *Id. See also Jones v. Experian Info. Sols., Inc.,* 982 F. Supp. 2d 268, 276 (S.D.N.Y. 2013) ("Courts have held that actual damages, in the form of pain and suffering, are not available unless the CRA improperly discloses the credit report."); *Fashakin v. Nextel Commc'ns*, No. 05-CV-3080 (RRM), 2009 WL 790350, at *12 (E.D.N.Y. Mar. 25, 2009) (holding that in order to recover damages for pain and suffering, a plaintiff must "demonstrate that some creditors became aware of the allegedly inaccurate information"); *McMillan v. Experian,* 170 F. Supp. 2d 278, n. 10 (D. Conn. 2001) ("recovery under the FCRA for pain and suffering is precluded where the plaintiff cannot show that a creditor was aware of the inaccurate information, because mere knowledge by a plaintiff of potentially damaging credit information is insufficient FCRA damages."). Thus, while emotional damages can sustain a claim under the FCRA, a plaintiff must allege that a third party was aware of the inaccurate information.

Here, Defendants move to dismiss the negligence claims under the FCRA and NYFCRA of Plaintiffs Glasgow, Higgins, Rivera, Schilber and Schilco.[6] Though these plaintiffs have each

---

[6] As in *Ritchie,* Defendants seek to dismiss both the FCRA and NYFCRA negligence claims, "but they cite only to cases addressing the FCRA, and do not otherwise identify any distinctions between the FCRA and NYFCRA claims. Keeping in mind the Second Circuit's recognition that 'the[se] two statutes must be construed in the same way' in light of the similarities between many of their provisions, *Scott v. Real Estate Fin. Grp.*, 183 F.3d 97, 100 (2d Cir.1999), the Court does not find it necessary to discuss separately the provisions of the NYFCRA referenced in the Complaint." *Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 234 (S.D.N.Y. 2014).

alleged that they suffered "mental anguish, embarrassment, annoyance, and emotional distress," the Complaint lacks any factual allegation of an actual injury. (Compl. ¶¶ 74, 90, 117, 124.) More specifically, these plaintiffs have not alleged that any third party or creditor was aware of the inaccurate reporting, which is required in order for emotional damages to sustain an FCRA claim. Additionally, any damages arising from these plaintiffs retaining attorneys arose from conduct entirely separate from the FCRA violations and therefore are also insufficient to sustain an FCRA claim.

The Court also notes that, with regard to Plaintiffs Rivera, Schilber, and Schilco, the Complaint does contain an allegation that Plaintiffs suffered "loss of credit opportunities." (*Id.* ¶¶ 117, 124.) However, these are "nothing more than conclusory allegations that Plaintiff[s] [are] entitled to actual damages from Defendants' alleged negligent FCRA violations." *Ritchie,* 14 F.Supp.3d at 240. The Court therefore dismisses, without prejudice, the negligent NYFCRA and FCRA claims of Plaintiffs Glasgow, Higgins, Rivera, Schilber and Schilco.

 E.  *Violations of GBL § 380-b(b)*

Defendants move to dismiss Plaintiffs' claims under N.Y. Gen. Bus. Law § 380-b(b) on the basis that the NYFCRA only affords protection to New York's consumers. Though Defendants have provided citations to and quotations from the Act's legislative history suggesting it may have been intended to protect New York consumers, the Court does not find this argument persuasive for the reasons stated below.

First and foremost, the language of the statute is clear. Section 380-b(b) reads, "No person shall request a consumer report." A consumer, for purposes of the statute, is defined as "an individual." N.Y. Gen. Bus. Law § 380-a. Nothing in the statute suggests that the Legislature intended to limit the definition of consumer to those who are citizens of or are residing in New

York State. In the absence of ambiguity, the Court need not, and should not, reference the legislative history to expand a statute's interpretation. As the Court in *Matter of Daniel C.* explained:

> A statute must be construed according to the ordinary meaning of its words and resort to extrinsic matter, such as the legislative history, is inappropriate when the statutory language is unambiguous and the meaning unequivocal. Where, as here, a statute is clear, a court should not attempt to cure an omission in the statute by supplying what it believes should have been put there by the Legislature for the judiciary should not substitute its wisdom for that of the Legislature.

*Matter of Daniel C.,* 99 A.D.2d 35, 41, 472 N.Y.S.2d 666, 671-72 aff'd sub nom. *Matter of Adoption of Daniel C.,* 63 N.Y.2d 927, 473 N.E.2d 31 (1984) (internal citations omitted). In this case, the statute refers only to "consumers," and the Court should not substitute its judgment for that of the Legislature by adding the New York limitation.

Moreover, in other New York protection statutes, the Legislature has included language limiting the reach of the statute to persons or transactions with some nexus to New York State. *See, e.g.*, N.Y. Gen. Bus. Law § 538 ("No person, firm, corporation, or other business entity, regardless of its form of organization, shall deceptively cause computer software to be copied onto the computer or internet-capable device of a consumer *in this state.*") (emphasis added); N.Y. Gen. Bus. Law § 455 ("For the purposes of this article, a person or entity shall be considered as engaged in the business of budget planning in New York, and subject to this article and the licensing and other requirements of article twelve-C of the banking law, if such person or entity solicits budget planning business *within this state* and, in connection with such solicitation, enters into a contract for budget planning with an individual then *resident in this state*.") (emphasis added); N.Y. Gen. Bus. Law § 480 ("The legislature hereby declares that this article shall be deemed an exercise of the police power of this state for the protection of the lives, health and safety of *citizens in this state* and of their property.") (emphasis added). In the absence of

such limiting language, the Court will not limit the reach of the statute.[7] *See also* N.Y. Stat. Law § 94 ("The legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense"); *Pierse v. Zimmerman*, 255 A.D. 708, 708, 5 N.Y.S.2d 703, 704 (App. Div. 1938) (holding that the courts must take the language of a statute as they find it and may not read into it a meaning not expressed by the Legislature).

Second, the NYFCRA regulates the conduct of credit reporting agencies and furnishers of credit information. *See generally* N.Y. Gen. Bus. Law § 380. Presuming a nexus to New York exists, the Court finds it inapposite that the Act was meant to distinguish the level of protection provided to a consumer based on their residency. In particular, it would be inequitable to afford out-of-state consumers less protection from New York creditors than that afforded to in-state consumers. In this regard, the New York courts' interpretation of the duties of the Attorney General relating to consumer protection is a helpful analogy. Courts in New York have consistently extended protection from illegal practices committed in New York to all consumers regardless of their residency. *See, e.g.*, *New York v. Feldman*, 210 F. Supp. 2d 294, 303 (S.D.N.Y. 2002) (finding that because the language of the statute does not bar recovery for out-of-state residents, the Legislature intended that all consumers be protected from illegal practices regardless of their residency); *People by Vacco v. Lipsitz,* 174 Misc.2d 571, 663 N.Y.S.2d 468, 474 (N.Y.Sup. 1997) ("[The] Attorney General has clear authority to seek to restrain illegal business practices by a local business in relation to both in-state and out-of-state residents ...."). For example, the Court in *In re DeFelice* explained, "New York does not and need not limit its

---

[7] In addition, parallel provisions of credit reporting statutes in other states contain such limiting language, suggesting that in New York, the Legislature did not intend to limit the reach of NYFCRA to New York consumers. *See, e.g.*, Vermont Statutes Annotated Title 9, section 2480a(1) (defining "consumer" as "a natural person residing in this state").

interest in consumer protection to its citizens. New York's quasi-sovereign interest is served whenever the perpetrators of consumer fraud within its borders are brought to justice regardless of whether their victims happen to be citizens." *In re DeFelice*, 77 B.R. 376, 380-81 (Bankr. D. Conn. 1987) (citing *People of the State of New York by Abrams v. Camera Warehouse, Inc.,* 130 Misc.2d 498, 496 N.Y.S.2d 659, 660 (N.Y.Sup.Ct.1985) (internal citations omitted)). *See also State by Abrams v. Camera Warehouse, Inc.,* 130 Misc. 2d 498, 499, 496 N.Y.S.2d 659, 660 (Sup. Ct. 1985) ("It appears to this Court that had the Legislature intended to restrict its application to transactions only with New York consumers it would have so restricted the language contained therein. Based upon the language of the statute together with the above-stated authority, the Court is of the opinion that the State has the power to obtain restitution for all consumers injured by a violation of this statute regardless of the residency of the consumer.")[8] The Court applies the same reasoning here. Where the statute is silent on protection of out-of-state consumers and New York State has an interest in restraining illegal practices of New York businesses, the NYFCRA seeks to protect both in-state and out-of-state consumers. Therefore, because Defendants are residents of New York and the factual allegations concern actions that were taken in New York, the NYFCRA will apply to their conduct even as to the out-of-state Plaintiffs, and Defendants' Motion to Dismiss on this prong is denied.

---

[8] The Court additionally finds persuasive the case of *Mlynek v. Household Fin. Corp*., No. 00 C 2998, 2000 WL 1310666 (N.D. Ill. Sept. 13, 2000). In that case, the Northern District of Illinois interpreted Florida's Consumer Collection Practices Act ("FCCPA"). Finding that the express language in the text of the statute did not limit its protection to Florida residents, the court held that the FCCPA extends to the protection of non-residents. As the court explained: "[u]nder the FCCPA, 'debtor' and 'consumer' are defined as 'any natural person obligated or allegedly obligated to pay any debt,' not as 'any resident of Florida obligated or allegedly obligated to pay any debt.' *See* § 559.55(2). Likewise, the definitions of 'creditor' and 'debt collector' do not contain any limitation that the credit being extended, or debt being collected, must have been to or from a resident of Florida. *See* §§ 559.55(3) and (6). … [Therefore,] Defendant's Florida office is a sufficient business presence in that state to render it answerable to plaintiff's claim that defendant violated the FCCPA when its agents attempted to collect an erroneous debt from plaintiff." *Mlynek*, 2000 WL 1310666, at *5.

Finally, although the NYFCRA extends to nonresident consumers, the language of the statute clearly limits the application of § 380-b(b) to individuals and not entities. N.Y. Gen. Bus. Law § 380-a. For this reason, the NYFCRA § 380-b(b) claims of Plaintiff Schilco must be dismissed.

## F.  *Violations of GBL § 349*

### 1.  *Consumers at Large*

Section 349 of the GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service...." N.Y. Gen. Bus. § 349(a). New York courts have held that, "[t]o successfully assert a [§ 349] claim, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *City of New York v. Smokes–Spirits.Com, Inc.*, 12 N.Y.3d 616, 883 N.Y.S.2d 772, 911 N.E.2d 834, 838 (2009); *accord Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010). Plaintiffs claim that Defendants violated Section 349 by "nonchalantly misus[ing] the court system of the State of New York and the City of New York, and routinely mak[ing] false and baseless statements with reckless abandon, and even after knowing the falsity of such statements" to obtain default judgments against alleged debtors. (Compl. ¶ 234.) The Defendants argue that Plaintiffs' claim under Section 349 must be dismissed because they have failed to plead any conduct that impacts "consumers at large." (Def.'s Memo, 22.) The Court finds, however, that Plaintiffs have sufficiently alleged consumer-oriented conduct within the ambit of the statute.

In New York, the requirement that defendants engage in consumer-oriented conduct has been construed liberally. *White v. Fein, Such & Crane, LLP*, No. 15-CV-438-JTC, 2015 WL 6455142, at *6 (W.D.N.Y. Oct. 26, 2015) (citing *New York v. Feldman*, 210 F.Supp.2d 294, 301

(S.D.N.Y. 2002)). It is clear that the requirement of consumer-oriented conduct means "the gravamen of the complaint must be consumer injury or harm to the public interest." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (citing *Azby Brokerage, Inc. v. Allstate Ins. Co*., 681 F.Supp. 1084, 1089 n. 6 (S.D.N.Y. 1988)). Moreover, though "consumer-oriented conduct" does "not require a repetition or pattern of deceptive behavior," the plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A*., 85 N.Y.2d 20, 25 (Cr.App. 1995). This does not mean that a plaintiff must allege other instances of misconduct; "a plaintiff need not delay bringing his suit until a defendants' improper conduct harms other individuals as long as the conduct has the potential to affect similarly situated consumers." *Id.* at 25 (noting that legislative history demonstrates that statute was intended to "afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds") (citation and internal quotation marks omitted). Instead, Plaintiffs must only allege that "the same or similar actions [of defendants] are potentially (and quite likely) directed toward numerous other consumers." *Shostack v. Diller*, No. 15-CV-2255 GBD JLC, 2015 WL 5535808, at *8 (S.D.N.Y. Sept. 16, 2015). *See also Midland Funding, LLC v. Giraldo,* 39 Misc. 3d 936, 961 N.Y.S.2d 743, 751 (Dist. Ct. 2013) ("a GBL § 349 pleading need not allege a pattern of deceptive behavior. Rather, the consumer-oriented conduct requirement simply contemplates a challenge to acts and practices which have a broader impact on consumers at large.") (internal quotation marks and citations omitted).

The critical question, therefore, is whether Defendants' conduct affects the public interest in New York. Defendants argue that this action concerns a "private dispute, unique to the parties" and therefore does not affect the public interest. (Def.'s Memo, 22.) In *Samms*, the

Southern District of New York held that the plaintiff's complaint failed to allege consumer-oriented conduct because the "conduct [complained of] consisted of filing a single complaint that suffered from various alleged deficiencies, as described above. This conduct—the prosecution of an individual lawsuit—was not commercial activity directed at consumers generally, nor did it have any 'ramifications for the public at large.'" *Samms*, 2015 WL 4079424, at *6 (citing *Obal v. Deutsche Bank Nat. Trust Co.*, No. 14 Civ. 2463, 2015 WL 631404, at *8 (S.D.N.Y. Feb. 13, 2015)). It is clear that filing an individual suit, unique to the parties thereto, does not satisfy the consumer-oriented standard. On the other hand, the Southern District of New York has also held that the persistent filing of fraudulent debt collection lawsuits against New York consumers does fall within the scope of Section 349. *Mayfield v. Asta Funding, Inc.,* 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015) (citing *Sykes v. Mel Harris & Associates*, LLC, 757 F.Supp.2d 413, 428 (S.D.N.Y. 2010); *Midland Funding, LLC*, 39 Misc.3d at 961 N.Y.S.2d at 752 (finding that "'routine filing' of assigned debt lawsuits by plaintiff 'despite a lack of crucial, legally admissible information' or 'sufficient inquiry' into whether the claims are meritorious" falls within scope of GBL)). *See also White*, 2015 WL 6455142, at *6 ("While it is true that defendant entered into private settlement agreements with the plaintiffs, defendant sought attorneys' fees and costs in accordance with its established practice and policies. It is alleged that all debtors in foreclosure actions brought by defendant would be subject to the same practices and policies. Defendant's acts therefore arguably have a 'broader impact' on the consuming public."). *Compare Thomas v. Altschul,* No. 13 CIV. 8320 RA, 2015 WL 5165334, at *4 (S.D.N.Y. Aug. 21, 2015) (internal citations omitted) (dismissing a Section 349 claim where "there is no allegation that this was a general practice, that it had ever occurred before or was likely to occur again, or that anyone other than Plaintiff was or would be affected by such conduct").

Here, Defendants' conduct is not limited to, nor is it unique to, the Plaintiffs in the instant action. Defendants have routinely filed allegedly fraudulent lawsuits in New York courts and obtained default judgments against various consumers. (*See* Compl. ¶ 234.) The Court is aware of at least four other cases—*Serin, Angermeir, Ritchie,* and *Aldrich*—in which Plaintiffs complain of the same conduct of Defendants. Clearly, these allegedly fraudulent practices are affecting more than just the current Plaintiffs, and it appears likely that the conduct is a general practice that could affect additional consumers. The Court therefore agrees with *Mayfield* that "Defendants' deceptive conduct is consumer-oriented and harmful to the public interest in that consumers are forced to respond to the fraudulent lawsuits or else face the penalty of wrongful default judgments." *Mayfield*, 95 F. Supp. 3d at 700.

## 2. *Preemption*

Under the FCRA, "[n]o requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under ...section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies."15 U.S.C. § 1681t(b)(1)(F). *See also* 15 U.S.C. § 1681s–2; *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 429 (S.D.N.Y. 2010) ("As pled, Plaintiffs' tort claims fall squarely within the subject matter regulated under § 1681s–2, which governs the furnishing of information to credit agencies.... As a result, Plaintiffs' state common law claims are preempted by § 1681t(b)(1)(F)"). Defendants argue that Plaintiffs' § 349 claims must be dismissed because they are preempted under the FCRA. As the Second Circuit has explained, "[Section] 1681t(b)(1)(F) preempts any recovery for damages based on allegations of erroneous or otherwise improper furnishing" of information to credit reporting agencies. *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 449 (2d Cir. 2015). The section, however, does not preempt *all claims* relating to furnishers of

credit information but only claims based on "laws that regulate the *responsibilities* of persons who furnish information to consumer reporting agencies." *Id.* at 447. It does not, therefore, bar all claims under § 349 but only those relating solely to the furnishing of information to consumer reporting agencies. As explained above, Plaintiffs' claims are based on a scheme of allegedly forging leases and filing fraudulent lawsuits to recover on such leases. Plaintiffs' claims are therefore much broader than the scope of preemption under the FCRA and are not preempted by the FCRA.

### 3. *Consumers Outside of New York*

Finally, Defendants argue that the out-of-state plaintiffs do not have standing to assert a claim under § 349, which prohibits "[d]eceptive acts or practices ... in this state." N.Y. Gen. Bus. Law § 349(a) (emphasis added). In *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (2002), the New York Court of Appeals interpreted this language in § 349 as "evinc[ing] a legislative intent to address commercial misconduct occurring within New York." Id., 746 N.Y.S.2d 858, 774 N.E.2d at 1195. The Second Circuit clarified this territorial requirement and explained the test as one based on "the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than on the residency of the parties." *Cruz v. FXDirectDealer*, LLC, 720 F.3d 115, 122 (2d Cir. 2013) (internal quotation marks and citations omitted). In *Cruz*, the court found that the claim "satisfied the territorial requirement because (1) the defendant was allegedly paid in New York, (2) the defendant allegedly required that all customer communications be directed to a New York location, and (3) its agreement with the consumers contained choice-of-law and forum-selection clauses selecting New York law and New York courts for litigation arising out of the

agreement." *Ward v. TheLadders.com, Inc.,* 3 F. Supp. 3d 151, 167-68 (S.D.N.Y. 2014), reconsideration denied (Apr. 21, 2014) (citing *Cruz,* 720 F.3d at 123-24).

In this case, the pleadings contain a number of connections to New York, including that many communications stemmed from New York and the Defendants availed themselves of the New York courts. The location of the allegedly deceptive transactions is a question of fact that cannot properly be decided on a motion to dismiss. Therefore, at this stage of the litigation, the out-of-state Plaintiffs have pleaded sufficient facts that, at the very least, give rise to a plausible inference that the allegedly deceptive transaction occurred in New York, and the Court cannot dismiss the claims as a matter of law.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. The following claims have been dismissed: (1) the RICO claims of plaintiffs Glasgow, Norris, and Moore; (2) all FCRA and NYFCRA claims of plaintiffs Moore and Rivera; (3) the FCRA and NYFCRA claims based on inaccurate reporting of plaintiffs Higgins and Norris; (4) the FCRA and NYFCRA claims based on negligence of plaintiffs Glasgow, Higgins, Schilber, and Schilco; and (5) the NYFCRA § 380-b claims based on impermissible access of credit reports of plaintiff Schilco. The Clerk of Court is respectfully requested to terminate the pending Motion. (ECF No. 13.) Defendants shall file an answer on or before January 5, 2016. An initial pretrial conference is scheduled for January 29, 2016 at 12:00 p.m. The parties are directed to bring a completed case management plan to this conference.

Dated:   December /, 2015  
        White Plains, New York

SO ORDERED:

NELSON S. ROMÁN  
United States District Judge

34