UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------  x
ELAINE AGHAEEPOUR, ANNE BARR, BRUCE          :
DRAGO, JULIE HIGGINS, SHANE MOORE,           :    7:14-cv-05449-NSR-AEK
MICHELE NORRIS, JESUS RIVERA, and HONG       :
ZHANG,                                       :
                                             :
                     Plaintiffs,             :
                                             :
          v.                                 :
                                             :
NORTHERN LEASING SYSTEMS, INC., MBF          :
LEASING, LLC, LEASE FINANCE GROUP,           :
LLC, LOUIS CUCINOTTA, JENNIFER               :
CENTENO a/k/a JENNIFER NUGENT, JAY           :
COHEN, SARA KRIEGER, JOSEPH I.               :
SUSSMAN, and JOSEPH I. SUSSMAN, P.C.,        :
                                             :
                     Defendants              :
-------------------------------------------------------------------  x
```

## DEFENDANTS' MOTION FOR A DIRECTED VERDICT
## PURSUANT TO FED. R. CIV. P. 50(A)

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................. ii

PROCEDURAL POSTURE.................................................................................................2

ARGUMENT.........................................................................................................................2

    I.     Legal Framework.................................................................................................2

    II.    Plaintiffs Cannot Meet Their Burden to Prove Violations of RICO (Substantive).3

          A.     Plaintiffs Cannot Prove the Existence of a RICO Enterprise ....................4

          B.     Plaintiffs Cannot Prove that Each Defendant Engaged in Two or More "Racketeering" Acts, Forming a Pattern, in Furtherance of the Common Purpose of the Enterprise...........................................................................7

          C.     Plaintiffs Cannot Show Causation or Damages ........................................9

    III.    Plaintiffs Cannot Meet Their Burden to Prove Violations of RICO (Conspiracy)..9

    IV.    Plaintiffs Cannot Meet Their Burden to Prove Violations of the FCRA or the NYFCRA..........................................................................................................10

    V.    Plaintiffs Cannot Meet Their Burden to Prove Violations of N.Y. Gen. Bus. L. § 349........................................................................................................................13

    VI.    Plaintiffs Cannot Meet Their Burden to Prove Common Law Fraud...................14

    VII.   No Basis for Punitive Damages.........................................................................15

    VIII.  A Directed Verdict Should be Granted as to Each Defendant ............................16

CONCLUSION....................................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Cobb v. Pozzi*, 363 F.3d 89 (2d Cir. 2004) .................................................................3

*Cortez v. Life Ins. Co. of N. America*, 408 F.2d 500 (8th Cir. 1969) .............................3

*Fane v Zimmer, Inc*., 927 F.2d 124 (2d Cir. 1991) ........................................................3

*Lange v. Penn. Mut. Life Ins. Co*., 843 F.2d 1175 (9th Cir. 1988) .................................3

*Ross v. Rhodes Furniture, Inc*., 146 F.3d 1286 (11th Cir. 1998) ....................................3

*Sharkey v J.P. Morgan Chase & Co*., 2018 US Dist LEXIS 35538 (S.D.N.Y. Mar. 5, 2018) .......3

*Smith v. Northwest Fin. Acceptance, Inc*., 129 F.3d 1408 (10th Cir. 1997) ...................2

*U.S. v. Fenix & Scisson, Inc*., 360 F.2d 260 (10th Cir. 1966) ........................................3

*Zeigler v. Fischer-Price, Inc*., 302 F. Supp. 2d 999 (N.D. Iowa 2004) ..........................3


**Statutes**

15 U.S.C. § 1681b(f) ............................................................................... 1, 10, 12

15 U.S.C. § 1681s-2(b)(A) ............................................................................ 1, 11

18 U.S.C. § 1962(c) ...................................................................................... 1, 4

18 U.S.C. § 1962(d) ...................................................................................... 1, 9

Fed. R. Civ. P. 50(a) ............................................................................ 1, 2, 16, 22

N.Y. Gen. Bus. L. § 380-b .......................................................................... 1, 12

N.Y. Gen. Bus. L. § 380–o .......................................................................... 1, 13

With Plaintiffs Elaine Aghaeepour and Michele Norris having been fully heard on the issues of the Second Amended Complaint, and having failed to present any legally-sufficient evidentiary basis for a reasonable jury to find for Plaintiffs on any of the claims, Defendants Northern Leasing Systems, Inc. ("NLS"), MBF Leasing, LLC ("MBF"), Lease Finance Group, LLC ("LFG") (NLS, MBF and LFG, together, the "Corporate Defendants"), Louis Cucinotta, Jennifer Centeno a/k/a Jennifer Nugent, Jay Cohen, Sara Krieger, Joseph I. Sussman (Cucinotta, Nugent, Cohen, Krieger and Sussman, together, the "Individual Defendants"), and Joseph I. Sussman, P.C. ("SPC") (collectively, "Defendants") hereby move for a directed verdict, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, on all of Plaintiffs' claims, namely:

- COUNT ONE: Racketeer Influenced and Corrupt Organization Act (RICO) 18 U.S.C. § 1962(c)

- COUNT TWO: Conspiracy to Conduct the Affairs of the Enterprise 18 U.S.C. § 1962(d)

- COUNTS THREE AND FOUR: Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(f): Obtaining Consumer Reports without a Permissible Purpose

- COUNTS FIVE AND SIX: Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(A): Refusal to Investigate and/or Rectify Errors in Reporting

- COUNTS SEVEN AND EIGHT: Violations of the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380-b—Obtaining Consumer Credit Reports without a Legitimate Purpose, Under False Pretenses, and/or Without Providing Advance Notice

- COUNTS NINE AND TEN: Violations of the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380-o—Reporting of False Information

- COUNT ELEVEN: Violation of the New York General Business Law for Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349

- COUNT TWELVE: Common Law Fraud

## PROCEDURAL POSTURE

Plaintiffs brought this action against Defendants on July 18, 2014.  ECF 1.  The current operative complaint is the January 17, 2017 Second Amended Complaint.  ECF 48.  On June 15, 2023, the Court granted Defendants' motion for sanctions and dismissed Plaintiffs Higgins, Rivera, and Zhang from the case.  ECF 171.[1]  The Court gave those Plaintiffs the chance to vacate the dismissal if they were to appear for depositions, which they failed to do.  On November 27, 2023, the Court granted Defendants' motion for attorneys' fees incurred in connection with the motion for sanctions.  ECF 177.

Trial commenced on June 17, 2024 with jury selection, followed by opening statements on June 18, 2024.  From the afternoon of June 18, 2024 through June 27, 2024, Plaintiffs presented their direct case, resting on June 28, 2024.  Defendants now make the instant motion pursuant to Fed. R. Civ. P. 50(a), following the close of Plaintiffs' case.

## ARGUMENT

### I.    Legal Framework

Rule 50(a) of the Federal Rules of Civil Procedure allows a court to grant judgment as a matter of law against a party upon a finding "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). The moving party must identify the judgment (by counts and/or issues) sought as well as the law and facts in support. *See Smith v. Northwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1415 (10th Cir. 1997). Nevertheless, the intent is merely to provide fair notice to the Court, so the grounds do not necessarily need to be stated with technical precision. *See, e.g., Zeigler v. Fischer-Price, Inc.*,

---

[1] Plaintiffs Barrett, Glasgow, Schilber, Wilson, Barr and Drago were all terminated previously. ECF 36, 43, 67, 94.

2

302 F. Supp. 2d 999, 1007 (N.D. Iowa 2004); *Cortez v. Life Ins. Co. of N. America*, 408 F.2d

500, 504 (8th Cir. 1969); *U.S. v. Fenix & Scisson, Inc.*, 360 F.2d 260, 266 (10th Cir. 1966). In

fact, the motion may be made orally. *See, e.g., Sharkey v J.P. Morgan Chase & Co.*, 2018 US

Dist LEXIS 35538 (S.D.N.Y. Mar. 5, 2018); *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286,

1289 (11th Cir. 1998). The issue is a matter of law to be determined by the judge. *Lange v. Penn.*

*Mut. Life Ins. Co.*, 843 F.2d 1175, 1181 (9th Cir. 1988).

The standard is similar to that for a motion for summary judgment. *Cobb v. Pozzi*, 363

F.3d 89, 101 (2d Cir. 2004). "A directed verdict is proper only if the evidence points so strongly

in favor of one party that a reasonable jury could reach but one conclusion, in favor of that party.

If the evidence presented raises a question such that reasonable men might reach different

conclusions, a directed verdict is improper. It should be noted, however, that a mere scintilla of

evidence is insufficient to present a question for the jury." *Fane v Zimmer, Inc.*, 927 F.2d 124,

128 (2d Cir. 1991).

As reflected below, Plaintiffs have failed to introduce evidence into this case that would

be sufficient to meet their burden with respect to each and every one of their claims, as to each

and every Defendant.

Defendants maintain that the two Plaintiffs have failed to introduce sufficient evidence to

establish <u>any</u> element of <u>any</u> of the twelve claims they assert against the nine Defendants. They

do not address every single such failure herein, in order to focus the Court on the most salient

(and possibly the most dispositive) examples of such failures.

## II.    Plaintiffs Cannot Meet Their Burden to Prove Violations of RICO (Substantive)

Both of the Plaintiffs allege that each of the Defendants violated what is commonly

referred to as "substantive" RICO:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

As shown in the statute, Plaintiffs bear the burden of proving five elements by a preponderance of the evidence, as to each Defendant:

- The existence of an "enterprise";

- That the alleged enterprise affected interstate or foreign commerce;

- That each Defendant was associated with, or employed by, the enterprise;

- That each Defendant engaged in a pattern (two or more acts) of "racketeering activity"; and

- That each Defendant conducted or participated in the conduct of the enterprise, through that pattern.

As with each of the other claims, Plaintiffs have failed to introduce evidence sufficient to support any of the elements of this claim against any of the Defendants. The analysis below focuses on the most salient and determinative of those failures, but is not intended to be limiting in any fashion and should not effect a waiver thereof.

### A.    Plaintiffs Cannot Prove the Existence of a RICO Enterprise

As the Court will be instructing the jury, just because a group of people work for the same company, that does not make them a RICO enterprise – they must have a wrongful common purpose. Plaintiffs allege that the Defendants were working together for the common purpose of bringing about the creation of invalid equipment leases (where, for example, the merchant's signature was improperly "cut and pasted" onto the document), and then attempting to extort money out of merchants by bringing lawsuits to collect on those allegedly-invalid leases. Although there was some evidence that some or all of Cohen, Krieger, Cucinotta, Nugent and Sussman

4

interacted with each other, the evidence falls far short of linking these people into a wrongful common purpose.[2]

      We begin with the fact that there is no evidence in the record that <u>even one</u> of the lawsuits brought in the New York Civil Court by SPC on behalf of one or more of the Corporate Defendants was based on a lease where the merchant's signature was improperly "cut and pasted" onto the document, let alone with respect to the one lawsuit brought against Ms. Norris, or either of the two lawsuits brought against Ms. Aghaeepour. Even assuming, *arguendo*, that <u>some</u> of the lawsuits brought in the New York Civil Court by SPC on behalf of one or more of the Corporate Defendants were based on leases where the merchant's signature was improperly "cut and pasted" onto the document, there is no evidence in the record that any of the Defendants ever knew that that was the case at any point in time, let alone at a point in time when they had any involvement in the process.

      There is also no evidence whatsoever imputing any knowledge or intent to any of the Defendants – especially the Individual Defendants – that their "purpose" was to tee up a pipeline of collection cases in New York Civil Court likely to result in default judgments so that the Defendants could then attempt to collect on those judgments.

      To the contrary, Mr. Cohen testified about the <u>actual</u> business model of the Corporate Defendants (leasing equipment to merchants across the country), Ms. Krieger testified largely about the policies and procedures involved in signing up ISOs and signing up merchants (which would be supportive of the leasing equipment business model), Mr. Sussman talked about his efforts as outside collections counsel – where the goal was to try to recover some of the monies

---

[2] In fact, Ms. Nugent testified that her interactions with Cohen and Krieger were very limited, and with Cucinotta from "time to time." Mr. Sussman also testified that his interactions with Cohen were limited.

lost through delinquent merchant lessees, Mr. Cucinotta and Ms. Nugent talked extensively about the policies and procedures of the collections and legal departments, respectively, as well as the forgery department, all of which demonstrates an extensive and thoughtful effort to work with delinquent merchants so as to avoid litigation.  None of the testimony supported Plaintiffs' theory of Defendants' motivation, and there is no evidence whatsoever to support Plaintiffs' view of the world.

Furthermore, the only evidence in the record concerning how the allegedly problematic leases came about comes in the form of completely speculative testimony by the Plaintiffs, each of whom testified that the only people they ever interacted with (and the people who allegedly misled them) were people who held themselves out as representatives of Independent Sales Organizations ("ISO"), turning to mere speculation as to who engaged in hypothetical "cut and paste," and how they accomplished it.  There is no evidence in the record that any of the Defendants had any involvement in, or any knowledge of, the alleged "cut and paste" of signatures on the Plaintiffs' leases.  And Plaintiffs confirmed under oath that they had no evidence that any of Cohen, Sussman, Krieger, Nugent or Cucinotta knew or interacted with any of the ISOs, or any of the representatives of ISOs, with whom they (the Plaintiffs) allegedly interacted.  By contrast, both Plaintiffs stated consistently throughout their testimony that they only interacted with ISO representatives, and it was those individuals who allegedly misled them, and yet Plaintiffs chose not to pursue claims against the ISOs or their representatives, or seek to elicit testimony or evidence from the ISOs.

Meanwhile, the only evidence in the record regarding the ISOs comes in the form of an exemplar agreement between one of the Corporate Defendants and one of the ISOs (Plaintiffs' Exhibit 20), in which it is made clear that the ISO is an independent contractor without authority

6

to speak for or bind the Corporate Defendant, and that the ISO was explicitly <u>not</u> an agent of the Corporate Defendant. Plaintiffs' counsel established time and again that none of the Defendants was <u>ever</u> present when any merchant signed a lease – that it was solely done in the presence of the ISO.

There was extensive testimony by multiple Defendants as to the multi-layer policies and procedures in place at the Corporate Defendants' collections, forgery and legal departments to analyze delinquent files and to screen for any potential problems, including allegations of forgery. Each of those witnesses confirmed under oath that policies and procedures were followed on their respective watches, that none of them had any knowledge one way or the other whether any issues arose during the processing of the Norris and Aghaeepour files.

There is no documentary evidence in the record substantiating that either Plaintiff ever lodged allegations with any of the Corporate Defendants regarding the authenticity of the signatures on their leases, and no Defendants testified that they had any knowledge of any such allegations being lodged by either of the Plaintiffs.

### B. Plaintiffs Cannot Prove that Each Defendant Engaged in Two or More "Racketeering" Acts, Forming a Pattern, in Furtherance of the Common Purpose of the Enterprise

Plaintiffs allege that the Defendants engaged in the predicate acts of mail fraud, wire fraud and extortion. Plaintiffs claim that Defendants committed mail fraud when they sent collection letters in the mail to Plaintiffs, wire fraud when they repeatedly telephoned Plaintiffs, and extortion when they threatened Plaintiffs through some means. Other than their extremely general testimony, however, Plaintiffs introduced no evidence of the use of the mails, wires or extortion. They did not submit a single such letter, record of a single telephone call, or documentation of a single alleged extortion, or even any of the details (date, time, address, telephone number) of a single such item. Nor did they introduce in any way the identities of the

people who made the phone calls, signed or sent the letters, or conveyed the messages of extortion.

There is no evidence whatsoever detailing the date, time or sender/caller of any single telephone call, letter or harassment, and there is no evidence whatsoever detailing the words that were spoken or written in connection therewith.  Plaintiffs certainly did not introduce any evidence indicating whether any of the Individual Defendants committed any acts of alleged mail fraud, wire fraud or extortion.  To the contrary, Plaintiffs and Defendants alike confirmed that neither Ms. Aghaeepour nor Ms. Norris ever communicated or interacted in any way with any of Cohen, Sussman, Krieger, Nugent or Cucinotta.

We know (but the jury does not know – because Plaintiff failed to introduce evidence on the subject) that Ms. Nugent reviewed and verified the complaint filed against Ms. Norris, and Mr. Cucinotta reviewed and verified the complaint filed against Ms. Aghaeepour.  However, the Plaintiffs did not put any of the three Civil Court verified complaints at issue into evidence, and did not elicit testimony from either Ms. Nugent or Mr. Cucinotta confirming that they had verified their complaints, leaving the jury with no evidence of any "acts" (racketeering or otherwise) by either Ms. Nurgent or Mr. Cucinotta.

Even if the proof of the verifications was in evidence, Ms. Nugent only verified one complaint (the MBF complaint against Ms. Norris).  With only one potential "act" in evidence, the evidence cannot support a finding of a "pattern" with respect to her, and for this additional reason alone the RICO claim against her must fail.  And while we know that Mr. Cucinotta verified two complaints, verifying civil court complaints, with no evidence that he had any awareness of any allegations of anything being amiss with respect to the Aghaeepour leases, there are simply no predicate acts to form a pattern, and the RICO claim against him must fail.

C.    **Plaintiffs Cannot Show Causation or Damages**

Even if Plaintiffs could satisfy the elements of RICO with the minimal evidence they introduced, they cannot link the alleged RICO violation to damages.  First, there is little to no evidence in the record relating to either Plaintiff's damages.  Ms. Norris – for example – spoke in very general terms about time she spent "dealing with" the default entered against her, her newly-disclosed mental health expenses (having specifically testified at deposition that she had none), and her embarrassment, stress and mental anguish.  She provided no documentation for any of the foregoing, and providing no connective tissue between the alleged actions of the Defendants and her speculative losses.

The record evidence does not support the existence of a RICO enterprise comprising of the Defendants, nor does it support the commission of two or more predicate acts by each (or any) of the Defendants in furtherance of the alleged common purpose.  Finally, there is insufficient evidence in the record of damages, and no reliable evidence that the alleged RICO acts of Defendants caused either Plaintiff to suffer damages.

III.    **Plaintiffs Cannot Meet Their Burden to Prove Violations of RICO (Conspiracy)**

For many of the same reasons discussed in the previous section, a directed verdict with respect to the RICO (Conspiracy) count should be granted as well, as Plaintiffs have not introduced evidence sufficient to prove any of its elements against any of the Defendants.  18 U.S.C. § 1962(d) requires Plaintiffs to prove that each Defendant was party to an agreement to participate in a RICO enterprise, that each such Defendant knowingly and willfully became a member of that agreement, and that someone in the agreement agreed to commit two racketeering acts.

Plaintiffs' allegations regarding the enterprise in the conspiracy count are the same as those in the substantive count.  Just as there is no evidence of a RICO enterprise, there is

9

likewise no evidence of an agreement to <u>form</u> a RICO enterprise.  There is no evidence in the record at all that any of the Defendants – let alone two or more of them working together – had the common purpose of issuing leases so that they would result in default judgments in the New York Civil Court.  There is likewise no evidence that any of the Defendants – especially the Individual Defendants – were in an agreement by which they were <u>planning</u> to bring such a scheme about.  There is no evidence that any of the Defendants – especially the Individual Defendants – were planning to engage in two or more predicate acts of mail fraud, wire fraud or extortion.  Because there is no evidence of a conspiracy to violate RICO, there is also no evidence that such violation caused damages to Plaintiffs.  On top of that, the evidence supporting the nature and amount of Plaintiffs' damages is essentially nonexistent.

A directed verdict of the RICO (Conspiracy) charge should be granted.

## IV.    Plaintiffs Cannot Meet Their Burden to Prove Violations of the FCRA or the NYFCRA

Eight of the Counts in the Second Amended Complaint concern alleged violations of the Federal and New York Fair Credit Reporting Acts.  All eight of those Counts suffer from a failure of proof as to each and every element, and each and every Defendant.  Most critically (but without intending to limit the argument), the record is bereft of any evidence of any Defendant engaging in any act touching on the credit information of either of the Plaintiffs, without which there obviously can be no violations of the FCRA or NYFCRA.

In Counts 3 and 4, Plaintiffs allege that each of the Defendants violated 15 U.S.C. § 1681b(f), which prohibits the use or obtaining of a consumer report without (a) an authorized purpose and (b) certification by the user.  There is absolutely no evidence in the record that any Defendant – especially any of the Individual Defendants – used or obtained either of the Plaintiffs' credit reports.  Defendants Sussman, Nugent and Cucinotta all had roles with no

10

connection to the pulling of credit reports. While Sara Krieger oversaw the department that signed up new merchants, and Krieger ultimately reported to Cohen as CEO, there is (a) no evidence that Norris's or Aghaeepour's credit reports were actually pulled (and thus no evidence of the circumstances surrounding the pull), and (b) no evidence that Krieger or Cohen pulled either of the Plaintiffs' credit. This conclusion applies equally to the claims of willful and negligent FCRA violations. There is no evidence that credit was pulled by any of the Defendants, so there is obviously (and actually) no evidence as to the state of mind of the Defendants who did so. As there is no evidence that either Plaintiffs' credit report was pulled, let alone by one of the Defendants and let alone improperly, there can be no damages. On top of that, as discussed above, there is minimal evidence that speaks in any way to either Plaintiffs' alleged damages.

In Counts 5 and 6, Plaintiff Aghaeepour (but not Norris) alleges that each of the Defendants violated 15 U.S.C. § 1681s-2(b)(A) by refusing or failing to investigate and/or rectify errors in reporting to a consumer credit agency. This requires proving – as to each Defendant – that (a) the Defendant reported information concerning Ms. Aghaeepour to a credit agency; (b) the Defendant received notice from the agency that Ms. Aghaeepour disputed the completeness or accuracy of the information that had been reported; and (c) the Defendant failed to investigate in response. There is no evidence in the record that any – let alone that each – Defendant reported information concerning Ms. Aghaeepour to a credit agency. There is no evidence that any – let alone each – Defendant was put on notice of an accuracy/completeness complaint by Ms. Aghaeepour. And there is of course no evidence that any – let alone each – Defendant failed

11

to investigate in response.[3]  As there is no evidence to support the violation, there is no evidence

to support causation and damages, and the evidence of damages is minimal to the point of

nonexistence.

Counts 7 and 8 relate to alleged violations of § 380-b of the New York Fair Credit

Reporting Act ("NYFRCA") by the Corporate Defendants (but not the Individual Defendants or

SPC).  Like § 1681b(f) of FCRA, this section prohibits pulling a credit report improperly.  Under

the New York statute, one may not request a consumer report, for credit, employment, insurance,

or rental or lease of residences, without first informing the consumer in writing or in the same

manner in which the application was made that (1) a consumer report may be requested in

connection with such application, and (2) the applicant upon request will be informed whether or

not a consumer report was requested, and if such report was requested, informed of the name and

address of the consumer reporting agency that furnished the report.  Like Counts 3 and 4,

however, Counts 7 and 8 suffer from a lack of any evidence that any of the Corporate Defendants

actually requested one of the Plaintiffs' credit reports, a lack of any evidence that such request

was made without notice, a lack of evidence that either of the Plaintiffs made a request of the

Corporate Defendants to disclose whether a report was actually requested, and a lack of evidence

showing that the Corporate Defendants failed to respond appropriately to that request.  Without

basic evidence showing that what Plaintiffs allege happened actually did happen, there is no

claim.

---

[3] We note that in the Second Amended Complaint, Plaintiffs allege that "Defendants" made a
false entry in Ms. Aghaeepour's report ("[t]he exact dates on which Defendants made such entry
can be easily determined from Defendants' records"), Ms. Aghaeepour disputed an entry with
Experian, and that "[u]pon information and belief, Experian duly notified Defendants, through
Defendant Northern Leasing, of Ms. Aghaeepour's dispute with a request to conduct a
reasonable investigation into that dispute."  ECF 48 ¶¶ 68-69.  Plaintiffs did not introduce any
evidence in support of their allegations made upon information and belief.

Counts 9 and 10 assert claims under § 380-o of the NYFCRA, which requires proof that

each Defendant knowingly and willfully introduced, attempted or caused to introduce false

information into a consumer report agency's files to willfully damage the credit of the Plaintiff.

There is no evidence whatsoever supporting the idea that any of the Defendants – let alone the

Individual Defendants – interacted with a consumer reporting agency to report falsely and

damage Plaintiffs' credit.  Without such evidence, Plaintiffs cannot prevail and the motion

should be granted.  As with many of the other claims, there is also insufficient evidence of

damages, and insufficient evidence of causation leading to the damages.

All of the FCRA and NYFCRA claims are sorely lacking in evidentiary support,

beginning with a complete lack of evidence that credit reports were pulled, that credit

information was reported, and that investigations did not occur following notice of a request,

moving on to the fact that there is no evidence that any Defendant – let alone any of the

Individual Defendants – was involved in the credit pulling or reporting processes.  None of these

claims even get off the ground, and should be dismissed by directed verdict.

## V.    Plaintiffs Cannot Meet Their Burden to Prove Violations of N.Y. Gen. Bus. L. § 349

New York GBL § 349 is a general consumer protection statute that requires a plaintiff to

prove that a defendant engaged in a deceptive or materially misleading act or practice, causing

injury to plaintiff, where the deceptive acts were aimed at the plaintiff consumer.  In the Second

Amended Complaint, Plaintiffs allege how they believed that § 349 was implicated:

> Defendants nonchalantly misused the court system of the State of New York and
> the City of New York, and routinely made false and baseless statements with
> reckless abandon, and even after knowing the falsity of such statements. Even
> after the New York City Civil Court rejected jurisdiction because it would deprive
> Defendants' victims of their day in Court, Defendants nonchalantly continued
> commencing and prosecuting such lawsuits, obtaining default judgments, and
> enforcing such default judgments. Litigants depend on the integrity of the conduct
> of participants in civil proceedings through disputing the validity of their
> opponents' claims to impose or resist civil liability. For a litigant and its

13

Conspirators to concoct testimony or make false statements under oath even after they know it is wholly fabricated and baseless is an unacceptable fraud on the court. Defendants' conduct at issue was thus, a deceptive and/or unfair practice which affected, and continues to affect, the public at large.

ECF 48 ¶ 290. We can observe, however, that at trial, no evidence was introduced to support any of the following allegations (without limitation):

- Defendants nonchalantly misused the court system of the State of New York and the City of New York, and routinely made false and baseless statements with reckless abandon…

- After the New York City Civil Court rejected jurisdiction because it would deprive Defendants' victims of their day in Court, Defendants nonchalantly continued commencing and prosecuting such lawsuits…

In addition, "routinely made false and baseless statements with reckless abandon," and similar language, is insufficient from a trial-evidentiary standpoint. Plaintiffs would have had to introduce evidence of specific "false and baseless statements," each with its own time, date, medium and contents. A naked recitation of the elements, even with some kind of evidence to support it, could not support a violation of the statute. We have found nothing in the record that gives supports to these allegations, making Plaintiffs' § 349 claim without evidentiary foundation.

## VI.    Plaintiffs Cannot Meet Their Burden to Prove Common Law Fraud

Fraud is adjudged under the higher "clear and convincing standard," and requires the following:

clear and convincing evidence that (1) a specific defendant made a statement of material fact; (2) the statement was false; (3) the defendant either knew that the statement was false or made the statement recklessly without regard to whether it was true or false; (4) the defendant made the statement to convince the plaintiff to rely upon it; (5) the plaintiff did rely on the defendant's statement; (6) the plaintiff's reliance on the defendant's statement was justifiable; and (7) the plaintiff sustained damages because of her reliance on Defendants' statement.

As yet, Plaintiffs have failed to supplement their bare-bones pleading with a recitation of the actual alleged facts that they believe support their common law fraud claim, and the Court has ordered Plaintiffs to identify the particulars of the alleged misrepresentations. Unless and until they do so, we cannot even test whether the evidentiary record supports the claim.

Plaintiffs have failed repeatedly – at the direct instruction of the Court – to enunciate a set of facts that are sufficient to <u>allege</u> a claim of fraud. They certainly will not be able to meet their burden of proof. As there is no evidence of any statements being made (as Defendants did not interact with Plaintiffs), we would not reach the questions of whether the statements were misleading and/or material, whether there was reliance, and whether that reliance was reasonable. The parties – Defendants <u>and</u> Plaintiffs – testified that neither Plaintiff ever had any contact with any of the Individual Defendants, and so it cannot be the case that any Defendant made a material misrepresentation to a Plaintiff. For the same reason stated numerous times above, even if the evidence potentially supported a fraud claim by the clear and convincing standard, the evidence of damages is scant to the point of being unusable.

## VII. No Basis for Punitive Damages

Directed verdict should be granted as to each of Plaintiffs' twelve claims against the Defendants, as each of the claims has one or more elements that cannot be satisfied with the evidence in the record. Without detracting from the foregoing, there is also no basis for a jury to award punitive damages under any of the claims. Punitive damages – where available – require a showing of "malicious and reckless" behavior, to the exclusion of merely unreasonable behavior. No such evidence of malicious and reckless behavior was elicited at trial, which should eliminate the prospect of punitive damages in connection with any claims that survive this motion.

## VIII.  A Directed Verdict Should be Granted as to Each Defendant

Having reviewed the elements of each of the twelve claims against the backdrop of the evidence Plaintiffs have and have not brough into the record, it becomes clear that a Directed Verdict should be entered, pursuant to Rule 50(a), as to each of the Defendants (again, focusing on the most salient points without intending to limit this analysis):

- **Jennifer Nugent:**

    o  There is no credible evidence in the record that Ms. Nugent engaged in any act (let alone two acts) of mail fraud, wire fraud or extortion as to either Plaintiff, or as to any merchant.  There is also no evidence that she knew of, let alone was motivated by, the common purpose Plaintiffs allege motivated the Defendants.  Likewise, there is no evidence that she was conspiring to engage in any such behavior.  To the contrary, all of the evidence concerning her actions and state of mind suggests that she was motivated solely by doing her narrow job, doing so fairly and thoroughly, and that she was never aware of any instance where she or her department participated in the initiation of a legal action where she knew or had any reason to know of even an <u>alleged</u> impropriety, let alone one that had been established.  There is absolutely no basis to find her liable under the RICO claims – Counts I and II.

    o  There is also no evidence whatsoever that Ms. Nugent had anything to do with pulling credit reports, filing information with credit agencies, receiving notices of complaints by merchants regarding information held by credit agencies, or responding to same.  There is certainly no such evidence with respect to Plaintiffs Norris or Aghaeepour.  As such, there is no basis to find her liable under the fair credit claims – Counts III through X.

16

- Counts XI (GBL § 349) and XII (common law fraud) are fundamentally flawed in that neither is pled with the specificity required under the respective pleading standards (including the higher standard required for fraud), and neither is pled in such a manner to indicate how Ms. Nugent would have been implicated. With respect to fraud, the record does not contain any evidence of Ms. Nugent making a false statement upon which either Plaintiff relied to her detriment. As such directed verdict as to Counts XI and XII should also be granted.

- **Louis Cucinotta:**

  - The record speaks to Mr. Cucinotta much in the same way that it speaks to Ms. Nugent, which is to say there is no evidence in the record of his performance of two predicate acts of mail fraud, wire fraud or extortion, and no evidence that he was privy to, or supportive of, any improper common purpose, or conspiring to engage in any such behavior, requiring a directed verdict on the RICO claims.

  - Likewise, there is no evidence in the record of Mr. Cucinotta engaging in any of the foundational actions against either of the Plaintiffs required for FCRA and NYFCRA liability, and thus no basis to hold him liable.

  - There are insufficient allegations and a complete lack of evidence, tying Mr. Cucinotta to violations of GBL § 349 against either Plaintiff, and there are no allegations relating to Mr. Cucinotta committing a fraudulent act upon which either Plaintiff relied to her detriment, providing no basis for liability under Counts XI and XII.

- **Sara Krieger**

17

o  Ms. Krieger was more senior in the organization than Ms. Nugent or Mr.
   Cucinotta, but when it comes to the evidence in the record, there is nothing to
   implicate Ms. Krieger as to any of the claims, any more than there is with respect
   to Ms. Nugent or Mr. Cucinotta.

o  There is no evidence in the record of Ms. Krieger committing two predicate acts
   of mail fraud, wire fraud or extortion against anyone, nor is there evidence
   sufficient to support the theory that Ms. Krieger was motivated by the common
   purpose of bringing about the creation of invalid equipment leases, and then
   attempting to extort money out of merchants by bringing lawsuits to collect on
   those allegedly-invalid leases.  Likewise, there is no evidence she conspired to
   engage in that type of behavior.  All of the evidence as to Ms. Krieger's actions
   and motivations is to the contrary, and there is no basis for RICO liability.

o  There is no evidence in the record that Ms. Krieger ever engaged with the credit
   information of either Ms. Norris or Ms. Aghaeepour, and therefore no evidence
   that she improperly pulled either Plaintiffs' credit information, improperly
   reported as to either Plaintiffs' credit information, or failed to respond as required
   upon receiving notice that either Plaintiff had lodged a dispute with respect to
   credit information that had been reported by Ms. Krieger (or any Defendant).  A
   directed verdict as to all of the Fair Credit claims should be granted.

o  For the same reasons that directed verdict should be granted as to Counts XI
   (GBL § 349) and XII (common law fraud) as to Ms. Nugent and Mr. Cucinotta, so
   to it should be grated as to Ms. Krieger – Plaintiffs have failed to enunciate claims

against Ms. Krieger, and certainly have failed to prove those claims with evidence.

- **Jay Cohen**
  - Jay Cohen was the CEO of the Corporate Defendants. The evidence with respect to his involvement in the alleged wrongful acts, however, is no more significant, and in some respects even less significant, than the evidence with respect to the others.
  - There is no evidence that Jay Cohen engaged in any acts of wire fraud, mail fraud or extortion, and he testified at length about his motivations and the actual business model of the Corporate Defendants. The evidence with respect to Mr. Cohen is entirely insufficient to support any of the elements of either of the RICO claims.
  - There is no evidence that Jay Cohen interacted with the credit histories of either of the Plaintiffs in any manner (nor – to be sure – is there credible evidence in the record as to the credit reports, credit reporting or credit complaints lodged by either of the Plaintiffs). There is no basis on which the jury could find Jay Cohen liable for any of the FCRA or NYFCRA violations.
  - For the same reasons set forth above, Counts XI and XII also fail as against Mr. Cohen, in that Plaintiffs have failed to even enunciate their theories of liability, let alone proving through evidence that Jay Cohen is liable under any such theory.

- **Joseph Sussman and SPC**
  - The evidence is clear that the involvement of Mr. Sussman – the individual – with these matters was as one of the outside counsel to the Corporate Defendants,

19

bringing collection actions on behalf of the Corporate Defendants on what he and his clients had a good faith belief were defaulted – but valid – leases, and proceeding with those collection actions in the manner that had been agreed to in said leases.  There is no evidence of any improper purpose or motivation on the part of Mr. Sussman.  Indeed, the evidence is quite to the contrary regarding the steps that he and his staff engaged in, and the checks and balances that were in place both at SPC and at the Corporate Defendants before the defaulted leases and draft complaints reached SPC.

o   Plaintiffs elicited almost no evidence regarding SPC.  During cross-examination, Defendants introduced evidence that SPC is a separate entity from Mr. Sussman, that SPC has multiple personnel, including at least one other lawyer, that there were complaints filed by SPC that Mr. Sussman would not have personally handled, and there is no evidence in the record that Mr. Sussman (as opposed to SPC) was personally involved in bringing the case against Ms. Norris or the two cases against Ms. Aghaeepour.

o   There is no evidence that Mr. Sussman – the individual – engaged in any act of mail fraud, wire fraud or extortion against anyone, and there is no evidence that Mr. Sussman – the individual – was aware of or was motivated by an improper common purpose, or that he conspired to engage in activities motivated by such improper purpose, as opposed to doing his job as collections counsel for the company.  A directed verdict as to the RICO claims should be granted.

o   There is no evidence whatsoever that Mr. Sussman or SPC pulled credit reports or submitted credit-related information with respect to either Plaintiff, or that they

20

receive notice of a credit-related complaint by one of the Plaintiffs that they failed to investigate.  There is no basis to hold either Mr. Sussman or SPC liable under any of the FCRA or NYFCRA claims, and a directed verdict should be granted.

o  The Second Amended Complaint does not enunciate a proper theory of liability under GBL § 349 against Mr. Sussman or SPC, but – even if it did – the facts in evidence do not support their pled theory as against Mr. Sussman or SPC.[4]

- **Northern Leasing Systems, Inc. and MBF Leasing, LLC**

  o  The evidence in the record concerning NLS and MBF is coterminous with the evidence in the record concerning Ms. Nugent, Mr. Cucinotta, Ms. Krieger and Mr. Cohen.  Plaintiffs did not call a corporate representative of either entity (although they did take two Rule 30(b)(6) depositions).

  o  Assuming Plaintiffs would attempt to impute the evidence in the record touching upon the actions of Ms. Nugent, Mr. Cucinotta, Ms. Krieger and Mr. Cohen and

---

[4] By way of reminder, in the Complaint, Plaintiffs present their GBL § 349 theory as follows: "Defendants nonchalantly misused the court system of the State of New York and the City of New York, and routinely made false and baseless statements with reckless abandon, and even after knowing the falsity of such statements. Even after the New York City Civil Court rejected jurisdiction because it would deprive Defendants' victims of their day in Court, Defendants nonchalantly continued commencing and prosecuting such lawsuits, obtaining default judgments, and enforcing such default judgments. Litigants depend on the integrity of the conduct of participants in civil proceedings through disputing the validity of their opponents' claims to impose or resist civil liability. For a litigant and its Conspirators to concoct testimony or make false statements under oath even after they know it is wholly fabricated and baseless is an unacceptable fraud on the court. Defendants' conduct at issue was thus, a deceptive and/or unfair practice which affected, and continues to affect, the public at large."  ECF 48 ¶ 290.  This colorful narrative has not been supported by the evidence introduced at trial.

impute those to NLS and/or MBF, that effort should fail for all of the same

reasons it fails as against the individuals.

- o   A directed verdict as to all Counts against NLS and MBF should be granted.

- **Lease Finance Group, LLC**

  - o   Plaintiffs introduced no evidence whatsoever – and there is no evidence in the

    record – concerning the actions, inactions or motivations of LFG.

  - o   A directed verdict as to all Counts against LFG should be granted.

**<u>CONCLUSION</u>**

Defendants' motion for directed verdict pursuant to Fed. R. Civ. P. 50(a) should be

granted.


Dated:   New York, New York                      Respectfully submitted,
         June 28, 2024

                                                 _____/s/ Hillel I. Parness_____
                                                 Hillel I. Parness (HP-1638)
                                                 Nicole J. Chessin
                                                 PARNESS LAW FIRM, PLLC
                                                 136 Madison Ave., 6th Floor
                                                 New York, New York  10016
                                                 212-447-5299
                                                 hip@hiplaw.com
                                                 *Attorneys for Defendants Northern Leasing*
                                                   *Systems, Inc., MBF Leasing, LLC, Lease*
                                                   *Finance Group, LLC, Louis Cucinotta, Jennifer*
                                                   *Centeno a/k/a Jennifer Nugent, Jay Cohen, Sara*
                                                   *Krieger, Joseph I. Sussman, and Joseph I.*
                                                   *Sussman, P.C.*